# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| RASER TECHNOLOGIES, INC., *et al.*,[1] | ) Case No. 11-11315 (KJC) |
| Debtors. | ) (Joint Administration Requested) |

**MOTION PURSUANT TO SECTIONS 105, 363, 507, 1107 AND 1108 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION WAGES, SALARIES AND BENEFITS; (II) AUTHORIZING DEBTORS TO CONTINUE EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; AND (III) DIRECTING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION WAGE, SALARY AND BENEFIT OBLIGATIONS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby move the Court for entry of an order, the proposed form of which is attached hereto as Exhibit A, pursuant to sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"): (a) authorizing but not directing the Debtors to pay the prepetition wages, salaries, and benefits of their employees; (b) authorizing but not directing the Debtors to continue employee benefit programs in the ordinary course of business; and (c) authorizing and directing all banks to honor prepetition checks for payment of prepetition wage, salary and benefit obligations (collectively, the "Motion"). In support of this Motion, the Debtors rely on the Declaration of Nicholas Goodman in support of Chapter 11 Petitions and

---

[1] The Debtors are the following: Raser Technologies, Inc., Raser Technologies Operating Company, Inc, Raser Power Systems, LLC, RT Patent Company, Inc., Pacific Renewable Power, LLC, Western Renewable Power, LLC, Intermountain Renewable Power, LLC, Los Lobos Renewable Power, LLC, Columbia Renewable Power, LLC, Truckee Geothermal No. 1 SV-01, LLC, Truckee Geothermal No. 2, SV-04, LLC, Trail Canyon Geothermal No. 1 SV-02, LLC, Devil's Canyon Geothermal No. 1 SV-03, LLC, Thermo No. 1 BE-01, LLC, Thermo No. 2 BE-02, LLC, Thermo No. 3 BE-03, LLC, Cricket Geothermal No. 1 MI-01, LLC, Harmony Geothermal No. 1 IR-01, LLC, Lightning Dock Geothermal HI-01, LLC, and Klamath Geothermal No. 1 KL-01, LLC. For the purpose of these chapter 11 cases, the service address for all Debtors is: Raser Technologies, Inc., 5152 North Edgewood Drive, Provo, UT 84604.

1

Related Motions (the "Goodman Declaration"). In further support of this Motion, the Debtors submit as follows:

## I. Jurisdiction, Venue and Predicates for Relief

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are sections 105(a), 363, 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code.

## II. Background

3. On the date hereof (the "Petition Date"), each of the Debtors filed with the Court their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have, pursuant to a separate motion, moved this Court for an order authorizing the joint administration of these chapter 11 cases.

4. No creditors' committee has been appointed in these cases. No trustee or examiner has been appointed.

5. A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases are set forth in full in the Goodman Declaration, which was filed contemporaneously with this Motion and which is incorporated herein by reference. Additional facts in support of the specific relief sought herein are set forth below.

## III. Relief Requested

6. By this Motion, the Debtors request that this Court enter an order, pursuant to sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code, authorizing, but not directing, the Debtors to pay or otherwise honor prepetition wages, salaries, and commissions and prepetition obligations arising under various employee benefit programs (collectively, the "Prepetition Wages and Benefits"), owing to the Debtors' current employees (collectively, the "Employees"). The Debtors further seek authority to continue various employee benefit programs, as described below, in the ordinary course of business. Since the Debtors were able to fund the May 1, 2011 payroll for their Employees immediately prior to commencing these cases,[2] the relief sought in this Motion related to the Prepetition Wages and Benefits is principally related to two categories of claims for expense reimbursements (as described further herein). The Debtors are seeking authority to pay outstanding expense reimbursement claims up to the $11,725 cap imposed by sections 507(a)(4) and (5) of the Bankruptcy Code. In total, the Debtors estimate that the aggregate that they seek authority to pay Employees pursuant to this Motion will not exceed $30,000.

7. Finally, the Debtors request the entry of an order (a) directing all banks to honor the Debtors' prepetition checks for payment of the Prepetition Wages and Benefits and (b) prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers to Employees' accounts for Prepetition Wages and Benefits.

### A. Wages and Salaries

8. As of the Petition Date, the Debtors employ twenty-five (25) Employees, all of whom are full-time employees. Of the Employees, eleven (11) are hourly, thirteen (13) are

---

[2] Employees are paid on or about the 1st and 15th of every month. Since May 1, 2011 is a Sunday, Employees were paid by wire transfer on Friday, April 29, 2011 prior to the commencement of these cases.

3

salaried, and one (1) is daily. The average gross monthly payroll for the Debtors' Employees approximately is $240,000.[3] Employees are paid twice per month in arrears on or about the first and fifteenth of each month. The next scheduled payroll date is on or around May 15, 2011. All Employees are paid through Debtor Raser Technologies Operating Company, Inc. ("Raser Operating"). Raser Operating is reimbursed by the Thermo-No. 1 subsidiary, Thermo No. 1 BE-01, LLC ("Thermo-1"), for the payroll it funds for the eleven (11) Employees allocated to the Thermo-No. 1 plant. Prior to the Petition Date, payroll for the seven Employees allocated to the Debtors' Lightning Dock plant was funded by project finance lender Evergreen-FE Lightening Dock, LLC ("Evergreen-FE"). Evergreen-FE funded the Lightning Dock account and then, once funded, the funds to cover payroll for the Lightning Dock Employees is transferred from Lightning Dock to Raser Operating. Pursuant to this Motion, the Debtors request authority to pay the outstanding amounts owed as of the Petition Date for accrued and unpaid expense reimbursements.

**B.    Employee Benefit Programs**

9.    In addition to the wages and other compensation discussed above, the Debtors' Employees also generally are entitled to receive other forms of compensation, including health benefits, vacation pay, paid holidays, paid sick time and other earned time off, and reimbursement of certain business expenses, (collectively, the "Employee Benefit Programs"). These forms of compensation are usual, customary and necessary if the Debtors are to retain their qualified Employees and preserve the value of their estates.

10.    Paid Time Off. Employees are eligible to accrue paid time off ("PTO"). The Debtors seek authority to honor in the ordinary course of their business operations, the liabilities

---

[3]    All average monthly payroll amounts provided herein are based on historical data.

to their Employees that arose under their PTO policies or practices prior to the Petition Date. The Debtors anticipate that their Employees will utilize any accrued PTO in the ordinary course without resulting in any material cash flow requirements beyond the Debtors' normal payroll obligations.

11. <u>Expense Reimbursement</u>. Employees are entitled to reimbursement of certain limited categories of expenses, including expenses for travel, lodging, ground transportation, meals, cell phone costs, relocation expenses, supplies and other business expenses, (collectively, the "<u>Reimbursable Expenses</u>"), that are incurred in the ordinary course of their employment. The Employees submit receipts for reimbursement, which then are processed through the normal expense report and accounts payable process. By this Motion, the Debtors seek authority to pay two categories of Employees that have not yet been reimbursed for Reimbursable Expenses incurred prior to the Petition Date, as follows:

(a) <u>Thermo-1 Employee Reimbursement Checks.</u> Prior to the Petition Date, the following two Employees allocated to the Thermo-1 plant received checks for Reimbursable Expenses in the amounts indicated below. The checks were paid directly through the Thermo-1 O&M bank account maintained at Deutsche Bank and Trust. As those checks may not have been cashed, the Debtors seek authority to honor those checks post-petition as each is under the section 507(a) priority cap. Additionally, the Debtors seek authority to reissue the checks to these Employees to the extent the checks are not honored.

- Mike Gipson, Check No. 9309232167, in the amount of $1,648.06.
- Ryan Christensen, Check No. 9309232159, in the amount of $436.94.

(b) <u>CEO and CFO Reimbursable Expenses</u>. Nicholas Goodman and John Perry, the CEO and CFO of Debtor Raser Technologies, Inc., respectively, each have

5

outstanding amounts owed to them for Reimbursable Expenses that accrued within 180 days of the Petition Date. By this Motion, the Debtors seek authority to pay Mr. Goodman and Mr. Perry for outstanding Reimbursable Expenses up to the $11,725 priority cap.

12. <u>401(k) Plan</u>. The Debtors' Employees are eligible to participate in the 401(k) retirement savings plan maintained by the Debtors. The plan is funded entirely by the Employees themselves. There is no matching component funded by the Debtors. Accordingly, the Debtors request authority to continue the 401(k) plan in the ordinary course of business.

13. <u>Health Benefits Program</u>. The Debtors' Employees and their dependents are able to participate in the Debtors' health benefits program (the "<u>Health Benefits Program</u>"). The Health Benefits Program includes health insurance for Employees and their dependents, which is funded completely by the Debtors. Other portions of the Health Benefits Program, including dental insurance, vision insurance, short-term disability insurance, long-term disability insurance, life insurance, and flex spending accounts are funded entirely by the Employees themselves through payroll deductions. The Debtors request the Court's authorization to continue Employee's health benefit programs in the ordinary course of business.

**C.** **<u>Workers' Compensation</u>**

14. The Debtors provide workers' compensation benefits to Employees and make payments monthly to the appropriate state worker's compensation fund. The Debtors seek authority to continue paying and/or contesting in good faith, as appropriate in the Debtors' business judgment, all amounts related to workers' compensation claims that arose prior to the Petition Date, including, without limitation, any payments required as a result of such claims as they become due in the ordinary course of the Debtors' business.

### D. Social Security, Income Taxes, and Other Withholding

15. As required by law, the Debtors routinely withhold from Employee paychecks amounts that the Debtors are required to transmit to third parties, averaging approximately $27,150 per pay period. Examples of such withholding include Social Security, FICA, federal, state and local income taxes, garnishments, and health care payments. The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute monies held in trust and therefore are not property of the Debtors' bankruptcy estates. Thus, the Debtors believe that their practice of directing such funds to the appropriate parties is in the ordinary course of business and is appropriate, and seek authority to continue such practice.

### E. Direction to Banks

16. Finally, the Debtors seek an order authorizing and directing all banks to receive, process, honor and pay any and all checks drawn on the Debtors' payroll and general disbursement accounts related to Prepetition Wages and Benefits, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

### IV. Basis for Relief Requested

17. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, commissions, PTO, and employee benefit contributions be accorded priority in payment in an amount not to exceed $11,725 for each Employee. Under section 507(a)(4) of the Bankruptcy Code, employees are granted a priority claim for:

> allowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for
> —

> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . .

11 U.S.C. § 507(a)(4). Likewise, under section 507(a)(5) of the Bankruptcy Code, employees are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan —
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first;
>
> (B) but only for each such plan, to the extent of —
>
> (i) the number of employees covered by each such plan multiplied by $11,725; less
>
> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C.§ 507(a)(5).

18. Additionally, Bankruptcy Rule 6003, provides in pertinent part that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) . . . a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b).

19. As discussed above, the Debtors are only seeking authority to fund the payment of Reimbursable Expenses owed as of the Petition Date to two limited categories of Employees up to the $11,725 priority cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. As such, payment and/or honoring the Prepetition Wages and Benefits in the ordinary course of business should neither prejudice general unsecured creditors nor materially affect the Debtors'

estates, because section 507(a)(4) and section 507(a)(5) priority claims are entitled to payment in full under a reorganization plan. *See* 11 U.S.C. § 1129(a)(9)(B). The Debtors' ability to preserve and maximize the value of their business as a going-concern is almost entirely dependent upon the continued service, satisfaction, and loyalty of their Employees. The Debtors submit, therefore, that their estates and creditors will be adversely affected if the Debtors are unable to pay and/or honor the Prepetition Wages and Benefits.

20. The Debtors also have satisfied the requirements of Bankruptcy Rule 6003. In order to retain their Employees and maintain morale, the Debtors must have authority to pay or otherwise satisfy all amounts as summarized above. The amounts to be paid pursuant to this Motion are reasonable compared with the importance and necessity of the Employees and the losses the Debtors likely will suffer if these amounts are not paid.

21. Based upon the foregoing, the Debtors request that the Court enter the proposed order authorizing the Debtors to pay, in the ordinary course of business, the Prepetition Wages and Benefits, including without limitation the amounts necessary to fund and the claims for Reimbursable Expense as described herein. Such relief is justified because the failure to pay any such amounts could have a potentially devastating impact upon the Debtors' efforts to maximize the value of their estates.

22. The relief requested in this Motion is necessary and should be authorized under sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code. The Employees are vital to the continued operation and maximizing the value of the Debtors' estates. Accordingly, the Debtors submit that the relief sought herein is consistent with and authorized by sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code.

23. Section 105 provides bankruptcy courts with broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory, or equitable common law, principles. The purpose of section 105(a) is to "assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 *Collier on Bankruptcy* ¶ 105.01[1] at 105-6 (15th rev. ed. 2006). Section 105(a) codifies the bankruptcy court's inherent equitable powers. *See In re Peregrine Sys., Inc.,* 311 B.R. 679, 690 (D. Del. 2004) ("Section 105 specifically codifies what are traditionally called 'inherent powers' to give the bankruptcy courts the necessary ability to manage the cases on their docket. Those powers provide courts with 'the necessary authority to manage the arguments and conduct of parties to ensure judicial efficiency and to do justice.'") (citations and quotations omitted).

24. Courts have consistently permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate. *See, e.g., Miltenberger* v. *Logansport & S.W.R. Co.,* 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [indispensable] business relations."); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus."); *In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) (recognizing that the "[United States] Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re NVR L.P.,* 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) ("To justify the pre-plan payment of a prepetition obligation the proponent must show substantial

necessity. . . . In short, the payment must not only be in the best interest of the debtor but also in the best interest of its other creditors."); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay (In re Chateaugay Corp.)*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (holding that a court's equitable powers include authorizing a debtor to pay prepetition debts). Indeed, a bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (*citing Miltenberger*, 106 U.S. at 311).

25. The bankruptcy court's exercise of its authority under the "doctrine of necessity" through section 105(a) of the Bankruptcy Code is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which authorize a debtor-in-possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Further, a debtor-in-possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the going concern value of an operating business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code also is appropriate to carry out two central policies underlying chapter 11: (a) to permit the successful rehabilitation of the debtor; and (b) to preserve going concern value and maximize property available to satisfy all creditors.

26. Courts in this District have approved the payment of prepetition claims for wages, salaries, expenses and benefits on the grounds that the payment of such claims was necessary to

effectuate the chapter 11 process. *See*, *e.g.*, *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Dec. 10, 2010); *In re Wickes Holdings, LLC*, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); *In re Pope & Talbot, Inc.*, No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); *In re Delta Financial Corp.*, No. 07-11880 (CSS) (Bankr. D. Del. Dec. 19, 2007); *In re Tweeter Home Entm't Group, Inc.*, No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007).[4]

27. The Debtors' Employees are critical to the success of the Debtors' business. A significant deterioration in their morale at this critical time undoubtedly would have a devastating impact on the Debtors and the value of their assets and business. Consequently, it is critical that the Debtors continue, with respect to their current Employees, their ordinary course compensation policies and procedures that were in effect as of the Petition Date. If the checks issued and fund transfers requested in payment of compensation obligations are dishonored, or if such obligations are not timely paid, the Debtors' Employees will suffer extreme personal hardship and may be unable to pay their daily living expenses. The Debtors' creditors will not be prejudiced by the proposed payment of Prepetition Wages and Benefits. To the contrary, such payments will inure to their benefit through the uninterrupted continuation of the Debtors' business operations.

---

[4] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request to Debtors' counsel.

Additionally, the Debtors do not at this time seek to assume any executory contracts or obligations, and the Motion should not be deemed to be an assumption or adoption of any employee agreements or policies. Rather, the Debtors merely seek to take steps that they believe are necessary to retain their existing workforce and to maximize the value of the bankruptcy estates. Also, the Debtors will retain the discretion not to make the payments contemplated by the Motion for particular Employees, and nothing in the Motion shall, in and of itself, confer upon any Employees or other parties in entitlement to administrative priority or other preferences in distribution from the Debtors' estates.

28. The Debtors also seek authority to pay to the appropriate entities any and all payroll withholding amounts, including, but not limited to, Social Security, FICA, federal, state and local income taxes, garnishments, and health care payments.

29. The failure to make such payments may subject the Debtors and their officers to federal or state liability. *See, e.g., City of Farrell* v. *Sharon Steel Corp. (In re Sharon Steel Corp.),* 41 F.3d 92 (3rd Cir. 1994). Moreover, these funds are not property of the Debtors' estates, and therefore are excepted from the normal bankruptcy prohibitions against payment. *See Begier* v. *IRS,* 496 U.S. 53, 67 (1990). The Debtors therefore request that the Court confirm that such trust fund withholding is not property of the Debtors' estates and that the Debtors may transmit such withheld amounts to the proper parties in the ordinary course of business.

30. Finally, the Debtors request that the Court enter an order directing all banks to honor all prepetition checks for payment of Prepetition Wages and Benefits (including checks for Reimbursable Expenses) and prohibiting all banks from placing any holds on, or attempting to reverse, any automatic transfers to Employees' accounts for Prepetition Wages and Benefits.

31. Nothing in this Motion should be construed as a request for authority to: (a) assume any executory contract under section 365(a) of the Bankruptcy Code, or (b) change the classification of any claim or alter the rights of any Employee or other person. In particular, nothing in this Motion should be construed as a request to grant any person administrative expense priority pursuant to sections 507 and 503 of the Bankruptcy Code.

32. For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interest of all parties-in-interest.

## V. Notice

33. Notice of this Motion has been provided to: (a) the U.S. Trustee; and (b) the creditors holding the 30 largest unsecured claims against the Debtors' estates, as identified in the

Debtors' chapter 11 petitions. The Debtors submit that no other or further notice need be provided.

## VI. **No Prior Request**

34. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order substantially in the form annexed hereto as <u>Exhibit A</u>, granting the relief requested herein, and (b) grant to the Debtors such other and further relief as the Court may deem proper.

Dated: April 29, 2011  
       Wilmington, Delaware

BAYARD, P.A.

By:    */s/ Neil B. Glassman*
Neil B. Glassman (No. 2087)
Jamie L. Edmonson (No. 4247)
GianClaudio Finizio (No. 4253)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000
Fax: (302) 658-6395
nglassman@bayardlaw.com
jedmonson@bayardlaw.com
gfinizio@bayardlaw.com

-and-

Peter S. Partee, Sr. (N.Y. Bar No. 4484234)
Richard P. Norton (N.Y. Bar No. 3975737)
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, NY 10166
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

-and-

Michael G. Wilson (VSB No. 48927, DE No. 4022)
Henry P. Long, III (VSB No. 75134)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RASER TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 11-11315 (KJC) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**ORDER PURSUANT TO SECTIONS 105, 363, 507, 1107 AND 1108 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, SALARIES AND BENEFITS, (II) AUTHORIZING THE DEBTORS TO CONTINUE EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND (III) DIRECTING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION WAGE, SALARY AND BENEFIT OBLIGATIONS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order pursuant to sections 105(a), 363(b), 507(a)(3), 507(a)(4), 1107(a) and 1108 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors to pay Prepetition Wages and Benefits; (ii) authorizing, but not directing, the Debtors to continue the Employee Benefit Programs in the ordinary course of business; and (iii) directing all banks to honor prepetition checks for the payment of Prepetition Wages and Benefits, the Court finds that (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b); (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

---

[1] The Debtors are the following: Raser Technologies, Inc., Raser Technologies Operating Company, Inc, Raser Power Systems, LLC, RT Patent Company, Inc., Pacific Renewable Power, LLC, Western Renewable Power, LLC, Intermountain Renewable Power, LLC, Los Lobos Renewable Power, LLC, Columbia Renewable Power, LLC, Truckee Geothermal No. 1 SV-01, LLC, Truckee Geothermal No. 2, SV-04, LLC, Trail Canyon Geothermal No. 1 SV 02, LLC, Devil's Canyon Geothermal No. 1 SV-03, LLC, Thermo No. 1 BE-01, LLC, Thermo No. 2 BE-02, LLC, Thermo No. 3 BE-03, LLC, Cricket Geothermal No. 1 MI-01, LLC, Harmony Geothermal No. 1 IR-01, LLC, Lightning Dock Geothermal HI-01, LLC, and Klamath Geothermal No. 1 KL-01, LLC. For the purpose of these chapter 11 cases, the service address for all Debtors is: Raser Technologies, Inc., 5152 North Edgewood Drive, Provo, UT 84604.

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

(c) the relief requested in the Motion is in the best interest of the Debtors, their estates and their creditors; (d) proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and (e) the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED**.

2. The Debtors are authorized, but not directed, to pay or otherwise honor all Prepetition Wages and Benefits (including all claims for Reimbursable Expenses), as described in the Motion, to, or for the benefit of, the Employees, and to continue the maintenance of all Employee Benefit Programs in the ordinary course of their business operations, provided, however that such payment, continuance of such programs, other honoring of such Prepetition Wages and Benefits, or entry of this Order shall not make such obligations (including, without limitation, vacation pay and severance obligations) administrative expenses of the estates entitled to priority status under sections 507 and 503 of the Bankruptcy Code.

3. In accordance with this Order and any other order of this Court, each of the banks and financial institutions at which the Debtors maintain their accounts is authorized and directed to honor checks presented for payment, and to honor all funds transfer requests made by the Debtors related to the payments authorized by this Order, to the extent that sufficient funds are on deposit in such accounts or related funding accounts.

4. Deutsche Bank and Trust is hereby directed to honor the following checks issued by the Debtors prior to the Petition Date:

- Check No. 9309232167, payable to Mike Gipson in the amount of $1,648.06.

- Check No. 9309232159, payable to Ryan Christensen in the amount of $436.94

5. In the event that any prepetition checks issued by the Debtors to Employees for Reimbursable Expenses are dishonored, the Debtors are authorized to reissue new checks to those Employees in the appropriate amounts.

6. The Debtors may pay to the appropriate parties any and all amounts withheld from the wages of Employees, including, but not limited to, Social Security, FICA, federal, state and local income taxes, garnishments, health care payments, charitable donations and other types of withholding, whether these relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto.

7. Nothing in this Order, nor any payments made by the Debtors pursuant to this Order, shall change or modify the classification of any claim or in any way change or modify the rights or create new rights of the holder of any claim.

8. Neither the provisions of this Order, nor any payments made by the Debtors pursuant to the Motion or this Order, shall be deemed to constitute an assumption of any Employee Benefit Program or contract, or otherwise affect the Debtors' rights under 11 U.S.C. § 365(a) to assume or reject any executory contract between the Debtors and any Employee or any other person.

9. A copy of this Order shall be served by the Debtors on each of the banks and financial institutions at which the Debtors maintain their accounts.

10. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

11. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011
      Wilmington, Delaware

                                        Honorable Kevin J. Carey
                                        Chief United States Bankruptcy Judge