# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RASER TECHNOLOGIES, INC., *et al.*,[1] | Case No. 11-11315 (KJC) |
| Debtors. | (Joint Administration Requested) |
| | Δ I. 9 |

## INTERIM ORDER (I) APPROVING DEBTOR-IN-POSSESSION FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362, AND 364 AND FED. BANKR. P. 2002, 4001 AND 9014 AND LOCAL BANKRUPTCY RULE 4001-2; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362 AND 363 OF THE BANKRUPTCY CODE; (III) GRANTING ADEQUATE PROTECTION AND SUPERPRIORITY ADMINISTRATIVE CLAIMS; <u>(IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF</u>

Upon consideration of the motion (the "Motion") of Raser Technologies, Inc. ("Raser") and its subsidiaries, the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"), pursuant to sections 105(a), 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "Local Bankruptcy Rules"), seeking, among other things:

A.    Authorization and approval for the Debtors to obtain post-petition financing on an interim basis up to the aggregate principal amount of not more than $750,000

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Raser Technologies, Inc., Raser Technologies Operating Company, Inc, Raser Power Systems, LLC, RT Patent Company, Inc., Pacific Renewable Power, LLC, Western Renewable Power, LLC, Intermountain Renewable Power, LLC ("IRP"), Los Lobos Renewable Power, LLC, Columbia Renewable Power, LLC ("Columbia"), Truckee Geothermal No. 1 Sv-01, LLC, Truckee Geothermal No. 2, Sv-04, LLC, Trail Canyon Geothermal No. 1 Sv 02, LLC, Devil's Canyon Geothermal No. 1 Sv-03, LLC, Thermo No. 1 Be-01, LLC, Thermo No. 2 Be-02, LLC, Thermo No. 3 Be-03, LLC, Cricket Geothermal No. 1 Mi-01, LLC, Harmony Geothermal No. 1 Ir-01, LLC, Lightning Dock Geothermal Hi-01, LLC, Klamath Geothermal No. 1 Kl-01, LLC, And Borax Geothermal No. 1 Ha-01, LLC (collectively, the "Debtors"). The corporate address of the Debtors is 5152 Englewood Drive, Provo, Utah, 84604.

(the "Interim Amount Limit"), on the same terms and conditions set forth in the Summary of Indicative Terms and Conditions for DIP Credit Facility, dated April 28, 2011 (the "Summary of DIP Terms") attached as Exhibit A to the Motion (the "Interim DIP Facility"), which terms and conditions may be embodied in (a) a debtor in possession credit agreement (the "DIP Credit Agreement"), among Raser, as borrower, the other Debtors, as guarantors; Linden Capital, L.P. ("Linden") and Tenor Opportunity Master Fund, Ltd. and Aria Opportunity Fund, Ltd., as lenders (collectively, "Tenor", and together with Linden, the "DIP Lenders"), and Wilmington Trust FSB, in its capacity as administrative agent (the "Administrative Agent"), (b) a security agreement (the "Security Agreement"), among the Debtors, as grantors, and the Administrative Agent, and (c) control agreements, pledge agreements or other similar documents contemplated by the DIP Credit Agreement or Security Agreement, or as otherwise requested or required by the Administrative Agent or DIP Lenders, including, but not limited to, an agreement among the Administrative Agent, Debtors and DIP Lenders providing for, among other things, certain administrative and operational procedures, and certain customary exculpatory language and indemnification provisions in favor of the Administrative Agent in connection with the Interim DIP Facility prior to entry of the Final Order (the "Interim Lending Agreement", together with the Summary of DIP Terms and Interim Lending Agreement, collectively, the "DIP Loan Documents"), all of which, if requested by the DIP Lenders or Administrative Agent in their sole discretion (other than the Summary of DIP Terms and Interim Lending Agreement, which are required by the DIP Lenders and Administrative Agent, respectively), shall be executed and delivered by the parties thereto on or prior to May 20, 2011, in form and substance satisfactory to the DIP Lenders and Administrative Agent in their sole discretion, and shall become effective only after approval by this Court at the Final Hearing (as defined below) (other than the

Summary of DIP Terms and Interim Lending Agreement, which shall be effective on an interim basis pursuant to this Interim Order, and shall become effective on a final basis upon entry of the Final Order, unless replaced by other documentation to be approved at the Final Hearing);[2]

B.    Authorization, pursuant to section 364(c)(2) of the Bankruptcy Code, to grant to the Administrative Agent, for the benefit of the DIP Lenders, senior, first-priority, fully-perfected liens on and security interests in all Collateral (as defined below) (other than the Pre-Petition Senior Thermo Collateral, as defined below) that is not otherwise subject to a prior lien;

C.    Prior to (i) the entry of the Final Order and the Debtors paying $6,000,0000 in a single draw-down to pay and satisfy a portion of the Pre-Petition Senior Thermo Obligations (as defined below) (the "Senior Thermo Lender Paydown") and an amount sufficient to reimburse or pay the Pre-Petition Senior Thermo Lenders and the Prepetition Senior Agent their reasonable, documented out-of-pocket attorneys' fees and expenses in documenting this transaction, to the extent such amounts have not been paid or are not payable under and in accordance with the retainer previously provided to them by the Debtors (the "Senior Thermo Lender Reimbursement Amount"; together with the Senior Thermo Lender Paydown, the "Senior Thermo Lender Payment"), and (ii) a finding in the Final Order that the Pre-Petition Lien Holders' respective liens on and security interests and in the Pre-Petition Collateral are valid, perfected and enforceable), authorization, pursuant to section 364(c)(3) of the Bankruptcy Code, to grant to the Administrative Agent, for the benefit of the DIP Lenders, fully-perfected junior liens on and security interests in all Collateral that is subject to a prior lien (including, but not limited to, the Pre-Petition Senior Thermo Collateral) (the liens and security interests

---

[2] At present, the DIP Lenders intend to lend pursuant to the Summary of DIP Terms, the DIP Credit Agreement, this Interim Order and the Final Order (once entered), but shall have the right to require additional DIP Loan Documents.

described in paragraphs B and C above shall be collectively referred to herein as the "Interim DIP Liens");

    D.      Authorization of the Debtors to use Cash Collateral (as defined below) in which the Pre-Petition Senior Thermo Lenders and Pre-Petition Bridge Lenders (as each such term is defined below) have an interest;

    E.      Authorization to grant adequate protection, including, among other things, Replacement Liens (as defined below) and Superpriority Claims (as defined below) pursuant to section 364(c)(1) of the Bankruptcy Code to the Pre-Petition Senior Thermo Lenders (and the Pre-Petition Senior Agent on their behalf) with respect to the Debtors' use of Cash Collateral and all diminution in value of the Pre-Petition Senior Thermo Collateral (as defined below), which Replacement Liens shall have the same priority as the liens and security interests on the Pre-Petition Senior Thermo Collateral until entry of the Final Order (as defined below);

    F.      Authorization to grant adequate protection, including, among other things, Replacement Liens and Superpriority Claims to the Pre-Petition Bridge Lenders with respect to the Debtors' use of Cash Collateral and all diminution in value of the Pre-Petition Bridge Loan Collateral (as defined below), which Replacement Liens shall be junior to the DIP Liens and the Replacement Liens granted to the Pre-Petition Senior Thermo Lenders, and Superpriority Claims which shall be junior to the DIP Liens and Superpriority Claims granted to the Administrative Agent, for the benefit of the DIP Lenders, and junior to the Superpriority Claims granted to the Pre-Petition Senior Thermo Lenders, and which shall in all respects be governed by the Subordination Agreement (as defined below);

G.     Pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court on or prior to May 4, 2011, to consider entry of this Interim Order; and

H.     Pursuant to this Interim Order, that this Court schedule a final hearing (the "Final Hearing") on or prior to May 20, 2011, to consider entry of a final order authorizing and approving, on a final basis, all of the relief requested in the Motion and DIP Loan Documents (the "Final Order"), including authorizing the Debtors to obtain post-petition financing up to the aggregate principal amount of not more than $8,750,000, subject to the approval by this Court of the DIP Loan Documents (the "DIP Facility").

The Interim Hearing having been held by this Court on May **3**, 2011, and upon the Declaration of Nicholas Goodman in Support of Chapter 11 Petitions and Related Motions; the record made by the Debtors at the Interim Hearing and the evidence and arguments of counsel, and after due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.     Petition Date.  On April 29, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Cases") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.  The Debtors have filed a motion requesting joint administration of the Cases.  No trustee or examiner has been appointed in the Cases.

2.    <u>Jurisdiction, Venue and Statutory Predicates</u>.  This Court has jurisdiction over the Cases and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363, and 364(e), 364(d) and 507 of the Bankruptcy Code; Bankruptcy Rules 4001 and 9014; and Local Bankruptcy Rule 4001-2(b).

3.    <u>Committee Formation</u>.  No official committee of unsecured creditors (a "<u>Committee</u>") has been appointed in the Cases to date.

4.    <u>Notice</u>.  Notice of the Motion and Summary of DIP Terms, the relief requested therein, and the Interim Hearing has been served by the Debtors on (i) the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"); (ii) the Administrative Agent, (iii) counsel to the Administrative Agent; (iv) counsel to the DIP Lenders; (v) the Pre-Petition Senior Agent (as defined below); (vi) the Pre-Petition Senior Thermo Lenders and the Pre-Petition Bridge Lenders; (vii) Merrill Lynch; (viii) the Debtors' thirty (30) largest unsecured creditors, determined on a consolidated basis; and (ix) all other known holders of pre-petition liens, encumbrances or security interests against the Debtors' property.  Under the circumstances, notice was sent under Bankruptcy Rules 4001(b), 4001(c) and 4001(d), Local Bankruptcy Rule 4001-2 and section 102(1) of the Bankruptcy Code in light of the emergency nature of the interim relief requested in the Motion, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

5.    <u>Necessity and Uses of Financing and Cash Collateral</u>.  The Interim DIP Facility and the Debtors' use of Cash Collateral will allow the Debtors to continue the operations of their businesses and administer and preserve the value of their estates during the pendency of

the Cases. The Interim DIP Facility shall be drawn down in its entirety in a single draw and used exclusively to fund the working capital needs of the Debtors until the Final Order Date. Entry of this Interim Order approving the Interim DIP Facility and the Debtors' interim use of Cash Collateral will benefit the Debtors and their estates and creditors. Therefore, it is in the best interest of the Debtor's estates to establish the Interim DIP Facility described in the Motion, and as contemplated by the Summary of DIP Terms, and to authorize the Debtors' use of Cash Collateral, subject to the terms and conditions in the Summary of DIP Terms as set forth in this Interim Order.

6. <u>No Credit Available on Other Terms</u>. The Debtors are unable to obtain unsecured credit allowable under sections 503(b)(1), 364(a) or 364(b) of the Bankruptcy Code.

7. <u>Willingness to Lend</u>. The Debtors are unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting the DIP Liens to the Administrative Agent, for the benefit of the DIP Lenders, and the Superpriority Claims to the Administrative Agent, for the benefit of the DIP Lenders, pursuant to sections 364(d) and 364(c)(1) of the Bankruptcy Code under the terms and conditions set forth in the Summary of DIP Terms and DIP Loan Documents (as approved by the Court) and this Interim Order. The Debtors are also unable to obtain financing from sources other than the DIP Lenders, or on more favorable terms, than those set forth in the Summary of DIP Terms which will be incorporated into the DIP Loan Documents and approved by this Court at the Final Hearing.

8. <u>Business Judgment and Good Faith</u>. The terms and conditions of the Interim DIP Facility, as set forth in the Summary of DIP Terms, and the use of Cash Collateral, as described in the Motion, and as all were set forth at the Interim Hearing (including the

payment of interest to the DIP Lenders at the times, in the amount and in the manner provided in the Summary of DIP Terms) are fair and reasonable and the entry into the Interim DIP Facility on the terms and conditions set forth in the Summary of DIP Terms and to be incorporated into the DIP Loan Documents represent a sound, prudent exercise of the Debtors' business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The Interim DIP Facility and use of the Collateral, including Cash Collateral, were negotiated in good faith (as that term is used in section 364(e) of the Bankruptcy Code) and at arm's length and for fair consideration among the (i) Debtors, (ii) the DIP Lenders, (iii) the Administrative Agent, and (iv) the Pre-Petition Senior Thermo Lenders, the Pre-Petition Senior Agent and the Pre-Petition Bridge Lenders (the parties set forth in this subparagraph (iv), collectively, the "Pre-Petition Lien Holders"). Accordingly, all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the Interim DIP Facility, the Summary of DIP Terms, and the DIP Loan Documents (subject to approval by this Court), and any obligations or indebtedness owing to the DIP Lenders or Administrative Agent, or any of their respective affiliates (all of the foregoing collectively, the "Interim DIP Obligations"), shall be deemed to have been extended by the DIP Lenders and their respective affiliates in good faith (as that term is used in section 364(e) of the Bankruptcy Code), and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

9. <u>Property of the Estate</u>. Each item of the Collateral constitutes property of the estate of at least one Debtor.

10.    <u>Good Cause</u>.  Good and sufficient cause exists for the entry of this Interim Order.  The borrowings under the Interim DIP Facility and the Debtors' use of Cash Collateral and the other relief requested in the Motion, are necessary, essential, appropriate and in the best interest of the Debtors, their creditors, and their estates, as the borrowings under the Interim DIP Facility and access to Cash Collateral will, among other things, provide the Debtors with the liquidity necessary to fund the necessary expenses of their businesses, preserve and maximize the value of the Debtors' estates for the benefit of all creditors, enable the Debtors to implement the restructuring transactions contemplated under that certain Plan Support Agreement, dated as of April 29, 2011, among the Debtors, Linden, as Prepetition Lender, Tenor (together with its affiliate Parsoon Opportunity Fund, Ltd.) and Linden, as Sponsors, and the Pre-Petition Senior Thermo Lenders, and formulate and confirm the Plan, and avoid immediate and irreparable harm to the Debtors and their estates, their creditors, their businesses, their employees, and their assets which would result if the Debtors did not have access to the Interim DIP Facility and Cash Collateral.

11.    <u>Debtors' Acknowledgments and Agreements</u>.  Without prejudice to the rights of any other party but subject to entry of the Final Order, the Debtors admit, stipulate, acknowledge and agree that:

a)    <u>Thermo Pre-Petition Senior Indebtedness</u>.  Prior to the Petition Date, The Prudential Insurance Company of America and Zurich American Insurance Company (collectively, the "<u>Pre-Petition Senior Thermo Lenders</u>") pursuant to that certain Credit Agreement, dated as of August 31, 2008 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date, the "<u>Pre-Petition Senior Credit Agreement</u>"), among Thermo No. 1 BE-01, LLC ("<u>Thermo</u>"), as borrower, the Pre-Petition

Senior Thermo Lenders, as lenders, and Deutsche Bank Trust Company Americas, in its capacities as Administrative Agent and Collateral Agent (the "Pre-Petition Senior Agent"), provided financing to Thermo in the original principal amount of up to $31,175,092. As of April 27, 2011, Thermo, and certain debtor guarantors, were liable to the Pre-Petition Senior Thermo Lenders in the amount of $10,326,878.25, which includes accrued but unpaid interest through April 27, (but is exclusive of fees and expenses) incurred under and in connection with the Pre-Petition Senior Credit Agreement as provided therein (collectively, the "Pre-Petition Senior Thermo Obligations"). The Pre-Petition Senior Thermo Obligations are secured by first priority, fully-perfected security interests in and liens on (i) all of Thermo's right, title and interest in, to and under the "Collateral" as defined in the various agreements between the parties, including without limitation, that certain Account and Security Agreement, dated as of August 31, 2008 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date, the "Pre-Petition Senior Security Agreement") by and between Thermo and the Pre-Petition Senior Agent (in its further capacity thereunder as Securities Intermediary) and (ii) all of Intermountain Renewable Power, LLC's right title and interest in and to the "Pledged Collateral" as defined in that certain Pledge Agreement, dated as of December 4, 2009, between Intermountain Renewable Power, LLC and the Pre-Petition Agent and all of Columbia Renewable Power, LLC's right, title and interest in an to the "Pledge Collateral" as defined in the Pledge Agreement, dated as of August 31, 2008, between Columbia Renewable Power, LLC and the Pre-Petition Senior Agent and (collectively, the "Pre-Petition Pledge Agreements"), and together with the Pre-Petition Senior Credit Agreement and the Pre-Petition Security Agreement, the "Pre-Petition Senior Loan Documents") (all such collateral, the "Pre-Petition Senior Thermo Collateral").

\\\NY - 718156/000600 - 2317982 v10

b)      Bridge Loan. Prior to the Petition Date, David Handsman and the other lenders party from time to time (the "Pre-Petition Bridge Lenders") to that certain Bridge Loan Agreement, dated as of April 15, 2011 (the "Pre-Petition Bridge Loan Agreement"), by and between Raser and Thermo, as borrowers (the "Bridge Loan Borrowers"), and the Pre-Petition Bridge Lenders, as lenders, provided financing to the Bridge Loan Borrowers in the original principal amount of $750,000. As of the Petition Date, the Bridge Loan Borrowers were liable to the Pre-Petition Bridge Lenders in the amount of $750,000, plus accrued but unpaid interest, fees and expenses incurred under and in connection with the Pre-Petition Bridge Loan Agreement as provided therein (collectively, the "Pre-Petition Bridge Loan Obligations"; together with the Pre-Petition Senior Thermo Obligations, the "Pre-Petition Obligations"). The Pre-Petition Bridge Loan Obligations are secured by (i) senior, first priority, fully-perfected security interests in and liens on all of Raser's right, title and interest in, to and under its respective "Collateral" as defined in that certain Security Agreement (Second Lien in Respect of the Company), dated as of April 15, 2011 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date the "Bridge Loan  Security Agreement"; together with the Pre-Petition Bridge Loan Agreement, the "Pre-Petition Bridge Loan Documents"), and (ii) second lien, fully-perfected security interests in and liens on all of Thermo's right, title and interest in, to and under its respective "Collateral" as defined in the Bridge Loan Security Agreement (collectively, the "Pre-Petition Bridge Loan Collateral"; together with the Pre-Petition Senior Thermo Collateral, collectively, the "Pre-Petition Collateral").

c)      Subordination Agreement. The Limited Consent Agreement, dated as of April 15, 2011, by and among Thermo, Zurich American Insurance Company, The Prudential Insurance Company of America, as Administrative Lender and Lender, and the Pre-

Petition Senior Agent (as amended, restated, amended and restated, supplemented or otherwise modified on or prior to the Petition Date, the "Subordination Agreement", and together with the Pre-Petition Senior Loan Documents and the Pre-Petition Bridge Loan Documents, collectively, the "Pre-Petition Debt Documents"), pursuant to which, as more fully set forth therein, the Pre-Petition Bridge Lenders agreed to, among other things, subordinate their liens on and security interests in the Pre-Petition Senior Thermo Collateral and to make the exercise of their rights and remedies under the Pre-Petition Bridge Loan Documents subject to the rights and remedies of the Pre-Petition Senior Thermo Lenders relating thereto, is valid, binding and enforceable against the parties thereto and shall govern the respective rights and priorities hereunder of the Pre-Petition Senior Thermo Lenders and Pre-Petition Senior Agent, on one hand, and the Pre-Petition Bridge Lenders, on the other hand (collectively, the "Pre-Petition Lien Holders"), as they relate to Thermo and its assets and the respective Replacement Liens and Superpriority Claims granted hereunder to such parties;

        d)      **Validity and Enforceability.**  (a) The Pre-Petition Debt Documents are valid and enforceable by the Pre-Petition Lien Holders against the Debtors and as between the other parties thereto, (b) the Pre-Petition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors and are secured by valid, binding, enforceable, duly perfected first liens and security interests granted by the Debtors to the Pre-Petition Senior Thermo Lenders in the Pre-Petition Senior Thermo Collateral (the "Pre-Petition Senior Thermo Liens"), valid, binding, enforceable, duly perfected first and second (relating to Thermo) liens and security interests granted by the Bridge Loan Borrowers to the Pre-Petition Bridge Loan Lenders (the "Bridge Loan Liens"), and collectively with the Pre-Petition Senior Thermo Liens, the "Pre-Petition Liens") on the Pre-Petition Collateral in the amount and to the extent set forth

in the Pre-Petition Debt Documents, including the proceeds derived therefrom, (c) the Pre-Petition Lien Holders duly perfected the Pre-Petition Liens by, among other things, filing financing statements and, where necessary, by possession of relevant instruments, certificates, cash or other property, and all such financing statements were validly executed by, or at the direction or with the consent of, authorized representatives of the Debtors.

e)    <u>Cash Collateral</u>.  All of the Debtors' cash constitutes Cash Collateral (as defined below) or proceeds of the Pre-Petition Collateral and, therefore, is Cash Collateral of the Pre-Petition Lien Holders.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall be deemed to include, without limitation: (i) all "cash collateral" as defined under Bankruptcy Code section 363; and (ii) all deposits subject to setoff and cash arising from the collection or other conversion to cash of property of the Debtors in which the Pre-Petition Lien Holders assert security interests, liens or mortgages, regardless of (a) whether such security interests, liens, or mortgages existed as of the Petition Date or arose thereafter pursuant to this Interim Order, and (b) whether the property converted to cash existed as of the Petition Date or arose thereafter.

(a)    Based on the foregoing,

(b)    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

12.    <u>Motion Granted</u>.  The Motion is granted in accordance with the terms and conditions of this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order that have not been withdrawn, waived or settled, are hereby denied and overruled.

13.    <u>Final Hearing.</u>  The Final Hearing to consider entry of the Final Order will be held on May 19 , 2011, at 9:00 p.m. prevailing Eastern time.  The Debtors shall, on or before May 4, 2011, mail copies of a notice of the entry of this Interim Order, together with a copy of this

Interim Order, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to such date a request for notice with the Bankruptcy Court and to counsel for the Committee, if any. Such notice shall constitute adequate notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of, among other things, (a) the proposed waiver of rights under section 506(c) of the Bankruptcy Code, (b) the proposed indefeasible Senior Thermo Lender Payment, (c) the proposed findings that the respective liens of the Pre-Petition Lien Holders in the Pre-Petition Collateral are valid, binding and enforceable and barring any challenges to such liens, (d) the proposed granting of liens to the Administrative Agent, for the benefit of the DIP Lenders, on the proceeds or property recovered from, the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, (e) the proposed restriction on "marshalling" (or the application of any similar doctrine) relating to the Administrative Agent, DIP Lenders and/or Pre-Petition Lien Holders, (f) the proposed Carve-Out (as defined in the Motion), and (g) the proposed exculpation applicable to the Administrative Agent, DIP Lenders and Pre-Petition Lien Holders. The notice of entry of this Interim Order shall state that any party in interest objecting to the DIP Facility, Summary of DIP Terms, DIP Loan Documents or use of Cash Collateral or agreements with the Pre-Petition Thermo Lenders on the terms and conditions set forth therein and herein shall file a written objection with the United States Bankruptcy Court Clerk for the District of Delaware no later than May 12, 2011, at

4:00 p.m. prevailing Eastern time, which shall be served so that the same are received on or before such date and time by: (i) the Administrative Agent: Wilmington Trust FSB; (ii) counsel to the Administrative Agent; (iii) counsel to the DIP Lenders: (a) Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn: Christopher R. Donoho, III, Esq. and Philip

*, except for any Official Committee, which may file any response by Noon (ET) on May 18, 2011,

14

Ehrlich, Esq. and (b) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Joseph M. Barry, Esq.; (iv) counsel to the Pre-Petition Senior Agent: Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271, Attention: Christopher Murray, Esq.; (v) counsel to the Pre-Petition Thermo Senior Lenders: (a) Baker Botts L.L.P, 2001 Ross Avenue, Dallas, TX 75231: Attention: Judith W. Ross, Esq., and (b) Morris James, LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801-1494, Attn: Brett Fallon, Esq; (vi) the Pre-Petition Bridge Lenders; (vii) counsel to any Committee; and (viii) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Room 5209, Wilmington, Delaware 19801, Attn: David Klauder, Esq.

14. <u>Authorization of the Interim DIP Facility and DIP Loan Documents.</u> The Debtors are hereby authorized, pursuant to the terms of this Interim Order and the Summary of DIP Terms, to borrow funds under the Interim DIP Facility up to an aggregate principal amount of no more than the Interim Amount Limit during the period from the date of entry of this Interim Order until the date of entry of the Final Order, in accordance with, and subject to, the terms of the Summary of DIP Terms and this Interim Order, and are hereby ordered to enter into the DIP Loan Documents on terms and conditions substantially similar to those set forth in the Summary of DIP Terms on or prior to May 20, 2011, and to seek approval of the DIP Loan Documents at the Final Hearing pursuant to the Final Order. The Debtors' use of borrowings under the DIP Facility and Cash Collateral, subject to Permitted Variances, shall be in accordance with the purposes described herein and the Original Budget (as defined below) and subsequent approved budgets.

15. <u>Authorization.</u> In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make,

execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all reasonable fees and expenses of the Administrative Agent and DIP Lenders and their counsel or other retained professionals, that may be reasonably required or necessary for the Debtors' performance of their obligations under or in connection with the Interim DIP Facility and Summary of DIP Terms and DIP Loan Documents, including, without limitation:

a) the execution, delivery and performance of the DIP Loan Documents;

b) the execution, delivery and performance of one or more waivers, forbearances, consents or amendments to the Summary of DIP Terms and/or the DIP Loan Documents, once executed and delivered and approved by this Court, in each case in such form as the Debtors and the Interim DIP Lenders may agree in writing, which do not (a) materially modify the Summary of DIP Terms, as approved by this Interim Order, or the DIP Loan Documents, as approved by this Court, (b) shorten the maturity of the extensions of credit thereunder, (c) increase the commitments of the DIP Lenders as set forth in the Summary of DIP Terms and/or the DIP Credit Agreement (as approved by this Court), as applicable (the "DIP Commitments") or the rate of interest thereunder, (d) change in a manner adverse to the Debtors any Event of Default under and as defined in the Summary of DIP Terms and/or the DIP Credit Agreement (as approved by this Court), as applicable (a "DIP Event of Default"), or add, remove or amend any covenants therein, or (e) materially and adversely affect the respective rights of the Debtors or as set forth in this Interim Order; and

c)      the execution, delivery and/or performance of all other documents and acts required under or in connection with the Summary of DIP Terms or DIP Loan Documents.

16.      Upon entry of this Interim Order, the Summary of DIP Terms, and upon execution and delivery of the DIP Loan Documents and approval thereof by this Court, the Summary of DIP Terms and DIP Loan Documents shall constitute valid, binding and enforceable obligations of the Debtors, enforceable against the Debtors in accordance with the terms thereof. Subject to entry of the Final Order, no obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be voidable, or recoverable under the Bankruptcy Code (including without limitation, under section 502(d) of the Bankruptcy Code) or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

17.      Interim DIP Liens.  As security for the Interim DIP Obligations, effective and perfected upon entry of this Interim Order, and without the necessity of the execution, recordation of filings of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the Interim DIP Liens are hereby granted to the Administrative Agent, for the benefit of the DIP Lenders, on (i) all of the Pre-Petition Collateral described and set forth in the Pre-Petition Security Agreement and Bridge Loan Security Agreement, whether existing on the Petition Date or thereafter acquired, and (ii) all other assets of the Debtors described below whether existing on the Petition Date or thereafter acquired, including, but not limited to, the following (the "Interim DIP Collateral"; together with the Pre-Petition Collateral, the "Collateral"):

(a)      all Accounts;

(b)     all Chattel Paper;

(c)     all Money, including Cash Collateral, and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(d)     all Documents;

(e)     all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software;

(f)     all Goods, including Inventory, Equipment and Fixtures;

(g)     all Instruments;

(h)     all Investment Property;

(i)     all Letter-of-Credit Rights and other Supporting Obligations;

(j)     all Records;

(k)     all Commercial Tort Claims;

(l)     all Proceeds and Accessions with respect to any of the foregoing Collateral; and

(m)     Each category of Collateral set forth above shall have the meaning set forth in the Uniform Commercial Code, it being the intention of the Debtors that the description of the DIP Collateral set forth above be construed to include the broadest possible range of assets.

18.     <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, the Interim DIP Liens constitute valid, binding, continuing, enforceable, fully-perfected first priority senior security interests in and liens upon the Collateral to the extent not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition

Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by Section 546(b) of the Bankruptcy Code.

19.  <u>Junior Lien on Encumbered Property</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, the Interim DIP Liens constitute valid, binding, continuing, enforceable, fully-perfected junior priority security interests in and liens upon the Collateral, to the extent subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date (including, but not limited to, the Pre-Petition Collateral) or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by Section 546(b) of the Bankruptcy Code;

20.  <u>Liens Senior to Certain Other Liens</u>. The Interim DIP Liens granted to the Administrative Agent, for the benefit of the DIP Lenders, shall be senior to and shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) subject to applicable law, any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than as expressly permitted under the Summary of DIP Terms or DIP Credit Agreement (as approved by this Court), as applicable.

21.  <u>Priority as between the Pre-Petition Senior Thermo Lenders, Pre-Petition Bridge Lenders and DIP Lenders in Certain Circumstances</u>. Notwithstanding any other provisions of this Interim Order, this paragraph controls the priority of liens as between the Pre-Petition Senior Thermo Lenders, the Pre-Petition Bridge Lenders and the DIP Lenders (a) until the Final Order is entered; and (b) if no Final Order is entered by August 1, 2011. For the

avoidance of doubt, it is the intention of the Pre-Petition Senior Thermo Lenders, the Pre-Petition Bridge Lenders and the DIP Lenders that until the Final Order is entered and the Senior Thermo Lender Payment is made, the liens of the Pre-Petition Senior Thermo Lenders in the Pre-Petition Senior Thermo Collateral shall be senior to and superior to the liens of the Pre-Petition Bridge Lender and the Administrative Agent and DIP Lenders in such collateral and that the terms of the Subordination Agreement will govern the respective rights of the DIP Lenders, the Pre-Petition Senior Thermo Lenders and the Pre-Petition Bridge Lenders. The Administrative Agent and DIP Lenders agree that until the Final Order is entered, they are bound to the Subordination Agreement in the same manner that the Pre-Petition Bridge Lenders are currently bound. Further, if the Final Order is not entered by August 1, 2011, then the liens of the Pre-Petition Senior Thermo Lenders in the Pre-Petition Senior Thermo Collateral shall continue to be senior to and superior to the liens of the Pre-Petition Bridge Lenders and the Administrative Agent and DIP Lenders in such collateral. Further, in such case, the Administrative Agent and DIP Lenders and the Pre-Petition Bridge Lenders agree that the terms of the Subordination Agreement will continue to govern the rights of the parties in the Pre-Petition Senior Thermo Collateral. Further, if the Final Order is not entered by August 1, 2011, the Pre-Petition Senior Thermo Lenders, Pre-Petition Bridge Lenders and the Administrative Agent and DIP Lenders, are free to take any and all action necessary to protect their rights in these Cases, subject at all times to this Interim Order and the terms of the Subordination Agreement.

22. <u>Adequate Protection for Pre-Petition Lien Holders</u>. In this Interim Order, the term "<u>Replacement Lien</u>" shall mean that, subject to the terms and conditions set forth in this Interim Order, the Pre-Petition Lien Holders shall have and are hereby granted (effective upon the date of this Interim Order and without the necessity of the Debtors or the Pre-Petition Lien

Holders' execution of mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or otherwise), valid and perfected, security interests in, and liens upon the Collateral, in the same relative priority and to the same extent, priority, enforceability, unavoidability and validity applicable to the respective Pre-Petition Lien Holders' security interests and liens in the Pre-Petition Collateral.

23.     The Pre-Petition Lien Holders are granted the following adequate protection for any diminution in the value of their respective interests in the Pre-Petition Collateral from the Petition Date resulting from (a) the imposition of the DIP Liens, (b) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Pre-Petition Collateral (including Cash Collateral) by the Debtors, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Adequate Protection Obligations"):

(A)     The Pre-Petition Lien Holders shall have and are hereby granted the Replacement Liens subject to (i) unavoidable, duly perfected liens existing as of the Petition Date, which liens shall retain their respective priorities *vis a vis* the Replacement Liens granted hereby to the Pre-Petition Lien Holders; (ii) the priorities set forth herein; and (iii) the Subordination Agreement. Subject in all respects to the Subordination Agreement, and except as otherwise set forth herein, the Replacement Liens granted to the Pre-Petition Lien Holders pursuant to this Interim Order shall be prior and senior to all liens and encumbrances (other than fees arising under 28 U.S.C. §1930) of (a) all other secured creditors in and to such property granted, or arising, subsequent to the date of this Interim Order, (b) any intercompany claim of the Debtors or any subsidiary or affiliate of the Debtors, and (c) any security interest or lien that is avoided or otherwise

\\\NY - 718156/000600 - 2317982 v10

preserved for the benefit of the Debtors' estates pursuant to Bankruptcy Code section 551; and

(B) The Pre-Petition Lien Holders are hereby granted allowed Superpriority Claims in the same relative priority and to the same extent, priority, enforceability, unavoidability and validity applicable to the Pre-Petition Lien Holders' security interests and liens in the Pre-Petition Collateral, provided, however, that after the Thermo Senior Lender Payment is made, and the liens of the Pre-Petition Senior Thermo Lenders are declared valid, binding and enforceable pursuant to the Final Order, the Superpriority Claims granted to Pre-Petition Lien Holders shall be junior in all respects to the Superpriority Claims granted to the DIP Lenders. No cost or expense of administration under Bankruptcy Code §§ 105, 503(b) and 507(b) shall be senior to, or *pari passu* with, any Superpriority Claims (other than fees arising under 28 U.S.C. §1930);

24. The Administrative Agent may issue a written notice of the occurrence of a Cash Collateral Event of Default (as defined below) to counsel for the Debtors, counsel for any Committee, and the U.S. Trustee (the "Cash Collateral Default Notice"). Absent entry of an order to the contrary, on the sixth (6th) business day after receipt of the Cash Collateral Default Notice by counsel for the Debtors, counsel for any Committee, and the U.S. Trustee, the Debtors shall be prohibited from using any Cash Collateral. For purposes of this Interim Order, a "Cash Collateral Event of Default" shall occur with respect to the Debtors' use of Cash Collateral if (a) the Debtors fail to perform any of their obligations in accordance with the terms of this Interim Order, including, without limitation, the Debtors' failure to use Cash Collateral in compliance with the Original Budget (subject to Permitted Variances) or subsequent approved budgets or to

22

provide the information or access as required herein, (b) any representation or warranty made by the Debtors under the Summary of DIP Terms or this Interim Order, or any other documents or agreements delivered or entered into in connection with the Interim DIP Facility, proves to have been false or misleading in any material respect as of the time made or given (including by omission of material information or fact necessary to make such representation, warranty or statement not materially misleading), (c) the appointment of a Chapter 11 trustee or examiner with expanded powers, (d) any of the Cases are converted to cases under chapter 7, (e) without the prior written consent of the Pre-Petition Lien Holders, the Debtors shall purport to grant or file a motion seeking to grant a third party a security interest or lien (other than the DIP Liens) upon all or part of any property of the Debtors that has a priority which is senior to, or equal with, any of the Pre-Petition Liens or Replacement Liens granted hereunder in all or any of a portion of such property, or (f) a DIP Event of Default shall have occurred.

25. <u>Termination</u>. All (i) Interim DIP Obligations of the Debtors to the DIP Lenders shall be immediately due and payable in accordance with the terms of the Summary of DIP Terms or DIP Credit Agreement (as approved by this Court) (but until entry of the Final Order and payment of the Thermo Senior Lender Payment, subject to the terms of the Subordination Agreement) as applicable, and (ii) authorization to use Cash Collateral shall cease, on the date (the "<u>DIP Expiration Date</u>") that is the earliest to occur of: (a) May 20, 2011, unless this Court shall have entered the Final Order on or prior to 11:59 p.m. (Wilmington, Delaware time) on such date; (b) August 11, 2011, unless this Court shall have entered an order pursuant to section 1129 of the Bankruptcy Code confirming the Plan on or prior to 11:59 p.m. (Wilmington, Delaware time) on such date; (c) August 26, unless the Plan shall have become effective prior

\\\NY - 718156/000600 - 2317982 v10

thereto; and (d) the occurrence of a DIP Event of Default and/or Cash Collateral Event of Default.

26. _Access to Collateral_. The DIP Lenders and the Administrative Agent and their respective agents, experts and advisors shall be given reasonable access to the Collateral for purposes of monitoring the business of the Debtors and valuing the Collateral.

27. _Information_. The Debtors shall provide the Administrative Agent, DIP Lenders and Pre-Petition Lien Holders with all inspection rights and reports (in addition to those required by this Interim Order) to the extent required under the Pre-Petition Debt Documents or as otherwise reasonably requested by the Administrative Agent, DIP Lenders or Pre-Petition Lien Holders.

28. _Reservation of Rights of Pre-Petition Lien Holders_. Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity, to the Administrative Agent, DIP Lenders or Pre-Petition Lien Holders, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion), except as limited by the Subordination Agreement.

29. _Perfection of Interim DIP Liens and Replacement Liens_. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtors to grant the liens and security interests to the DIP Lenders and Pre-Petition Lien Holders contemplated by the Summary of DIP Terms and DIP Loan Documents (with respect to the DIP Lenders) and this Interim Order.

\\\NY - 718156/000600 - 2317982 v10

30.     The Interim DIP Liens and Replacement Liens granted pursuant to this Interim Order shall constitute valid and duly perfected security interests and liens (subject until entry of the Final Order and payment of Thermo Senior Lender Payments to the priorities set forth herein and in the Subordination Agreement), and the DIP Lenders and the Pre-Petition Lien Holders shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Interim DIP Liens or Replacement Liens shall in no way affect the validity, perfection or priority of such liens.     The Administrative Agent, DIP Lenders and Pre-Petition Lien Holders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.     Whether or not the Administrative Agent, DIP Lenders or Pre-Petition Lien Holders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination, at the time and as of the date of entry of this Interim Order. Upon the request of the Administrative Agent or DIP Lenders, the Debtors and the Pre-Petition Lien Holders, without any further consent of any party, are authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable

the Administrative Agent, DIP Lenders, and the Pre-Petition Lien Holders to further validate, perfect, preserve and enforce the Interim DIP Liens.

31. A certified copy of this Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and recording.

32. <u>Use of Interim DIP Loan Proceeds and Cash Collateral; Budget</u>. Subject in all respects to the terms and conditions set forth herein, the Debtors are authorized to use the proceeds of the DIP Loans and the Cash Collateral in the amounts set forth in the Original Budget attached hereto as <u>Exhibit A</u> (the "<u>Original Budget</u>"), subject to Permitted Variances (as defined below), through the earliest to occur of (the "<u>Interim Period</u>"): (a) the date of entry of the Final Order, and (b) the occurrence of the DIP Expiration Date (as defined below). Subject to the terms and conditions set forth in this Interim Order, the Debtors are authorized to use the proceeds of the Interim DIP Loans and the Cash Collateral of the Pre-Petition Lien Holders solely for the purposes set forth in the Summary of DIP Terms and DIP Loan Documents (as approved by this Court), in accordance with the Original Budget, and any subsequent approved budget.

33. The Original Budget reflects on a line-item thirteen (13) week rolling-basis the Debtors' anticipated aggregate cash receipts and aggregate necessary and required working capital expenses for each week covered by the Original Budget. For each two-week period covered by the Original Budget and any subsequent budget, the aggregate actual disbursements by the Debtors during such two-week period of determination must be no greater than 110% of the aggregate amount of projected disbursements for such period as set forth in the

Original Budget or any subsequent budget (the "Permitted Variance"). For the avoidance of doubt, for purposes of calculating the Permitted Variance, any unused amounts set forth in the Original Budget or any subsequent budget for any period of determination may be carried forward and used during subsequent periods on a line-by-line basis, with no carry-over to any other line item. Upon the prior written request of the Debtors, or upon its own initiative, the Administrative Agent may, but is not required to, authorize the Debtors to exceed the Permitted Variance without further order from the Court. Except as expressly set forth herein, nothing in the Original Budget or this Interim Order shall be deemed or construed as (x) a finding or admission as to the validity of any claim relating to a budgeted amount, (y) an agreement or promise by any party in interest to pay any such budgeted claim, or (z) a waiver of the rights of any party in interest to contest any such claim. Furthermore, nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, nor authorize the use by the Debtors of any proceeds from any such disposition of assets. The Original Budget may be amended or modified in writing from time to time only with the prior written consent of the Administrative Agent and DIP Lenders.

34.     Budget. The Debtors shall provide to the U.S. Trustee, Administrative Agent, DIP Lenders, Pre-Petition Senior Agent, and Pre-Petition Lenders, so as to actually be received within four (4) business days following the end of each two-week period, (a) an updated rolling 13-week budget, and (b) a line-by-line variance report for the immediately preceding two-week period and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and actual cash disbursements to cash receipts and cash disbursements forecasted in the Original Budget for such period and showing on a line-by-line basis any

variance to the corresponding line-item of the Original Budget together with an explanation for such variance.

35.    <u>Section 552(b)</u>.  The DIP Lenders and Pre-Petition Lien Holders are entitled to all of the rights and benefits of section 552(b)(1) of the Bankruptcy Code and the "equities of the case" exception therein shall not apply.

36.    <u>Proofs of Claim</u>.  The Administrative Agent and DIP Lenders, and the Pre-Petition Lien Holders, may, but shall not be required to file proofs of claim in the Cases or any successor cases and any order entered by the Court in relation to the establishment of procedures to file proofs or a bar date in any of the Cases or any successor cases shall, or shall be deemed to, so provide.

37.    <u>Preservation of Rights Granted Under this Interim Order</u>.  Except as otherwise set forth herein, no claim *or* lien having a priority superior to or *pari passu* with those granted by this Interim Order to the Administrative Agent and DIP Lenders or to the Pre-Petition Lien Holders, respectively, shall be granted or allowed while any portion of the DIP Facility (or any refinancing thereof), the DIP Commitments, the Interim DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Replacement Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

38.    To the extent permitted by applicable law, if an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the

\\\NY - 718156/000600 - 2317982 v10

fullest extent permitted by law, that (i) the Interim DIP Liens, Replacement Liens and Superpriority Claims pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and pursuant to the Subordination Agreement) until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full and that such DIP Liens, Replacement Liens and Superpriority Claims, shall, notwithstanding such dismissal, remain binding on all parties in interest and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to and provided for in this Interim Order.

39. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the Summary of DIP Terms or DIP Loan Documents (as approved by this Court), as applicable, with respect to any DIP Obligations or with respect to the Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors prior to the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Administrative Agent, DIP Lenders and Pre-Petition Lien Holders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Loan

Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

40.     Except as expressly provided in this Interim Order or in the Summary of DIP Terms or DIP Loan Documents, the Interim DIP Liens, Replacement Liens, Superpriority Claims and all other rights and remedies of the Administrative Agent, DIP Lenders and Pre-Petition Lien Holders granted by the provisions of this Interim Order and the DIP Loan Documents, as applicable, shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, terminating the joint administration of the Cases or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Loan Documents shall continue in these Cases (whether or not these Cases cease to be jointly administered), or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, Replacement Liens and Superpriority Claims and all other rights and remedies of the Administrative Agent, DIP Lenders and Pre-Petition Lien Holders granted pursuant to this Interim Order, Summary of DIP Terms or DIP Loan Documents (as approved by this Court), as applicable, shall continue in full force and effect.

41.     <u>Limitation on Use of DIP Facility Proceeds and Cash Collateral</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings under the DIP Facility, Cash Collateral or Collateral may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Summary of DIP Terms or DIP Loan Documents (as approved by this

Court), as applicable, or the Pre-Petition Debt Documents, or the liens or claims granted under this Interim Order, Summary of DIP Terms or DIP Loan Documents (as approved by this Court), as applicable, or the Pre-Petition Debt Documents, (b) assert claims and defenses or any other causes of action against the Administrative Agent, DIP Lenders or the Pre-Petition Lien Holders or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Administrative Agent, DIP Lenders' or Pre-Petition Lien Holders' assertion, enforcement or realization on the Collateral in accordance with the DIP Loan Documents, the Pre-Petition Debt Documents or this Interim Order, (d) seek to modify any of the rights granted to the DIP Lenders or the Pre-Petition Lien Holders hereunder or under the DIP Loan Documents or the Pre-Petition Debt Documents, in each of the foregoing cases without such parties' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date or any professional fees and disbursements incurred in connection with such claims or any of the actions set forth in the foregoing clauses (a) through (d) unless in each case such payments are (i) approved by an order of this Court and (ii) in accordance with the Summary of DIP Terms or DIP Credit Agreement (as approved by this Court), as applicable, and the Original Budget or other approved budget, unless otherwise approved by the DIP Lenders in their sole discretion.

42.    <u>Right to Credit Bid</u>.  Subject to entry of the Final Order, the Administrative Agent, DIP Lenders and Pre-Petition Bridge Lenders shall have the right to "credit bid" all or a portion of the allowed amount of their claims during any sale of all or any part of the Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or as part of a plan of reorganization subject to confirmation under section 1129 of the Bankruptcy Code, and shall have standing with respect to all aspects of any such sales or hearings related thereto.

\\\NY - 718156/000600 - 2317982 v10

43.    <u>Reimbursement of Fees and Expenses</u>.  The Debtors shall reimburse the Administrative Agent and DIP Lenders for all of their reasonable costs, fees, charges and expenses incurred in connection with the Summary of DIP Terms, DIP Facility, DIP Loan Documents and the Cases (including, without limitation, their reasonable attorneys' and financial advisors' fees and expenses), whether incurred prior to or after the Petition Date and in connection with the enforcement of any rights or remedies of the Administrative Agent and DIP Lenders relating to the DIP Facility in accordance with this Interim Order, Summary of DIP Terms or DIP Loan Documents (as approved by this Court), as applicable.  A copy of any invoice submitted by the Administrative Agent or DIP Lenders to the Debtors shall also be delivered simultaneously to the Debtor, the U.S. Trustee and counsel to any Committee (the "<u>Fee Notice</u>").  None of such costs, fees, charges and expenses shall be subject to Court approval or required to be recorded or maintained in accordance with the United States Trustee guidelines relating to compensation and reimbursement of expenses and no recipient of any such payment shall be required to file any interim or final fee application with the Court.  Subject to the Debtors, any Committee, or the U.S. Trustee filing a written objection with this Court to any such fees and expenses within ten (10) days after receipt of the Fee Notice, the Debtors shall pay promptly such invoice in accordance with this Interim Order, Summary of DIP Terms or DIP Credit Agreement (as approved by this Court), as applicable.  To the extent a timely filed objection is filed by the Debtors, any Committee, or the U.S. Trustee, the Debtors (a) shall pay such portion of the fees and expenses to which no objection is interposed and (b) shall pay any remaining fees and expenses as ordered by the Bankruptcy Court (or upon withdrawal or resolution of the objection).

\\\NY - 718156/000600 - 2317982 v10

44.    Order Governs.    In the event of any inconsistency between the provisions of this Interim Order and the Motion, Summary of DIP Terms, DIP Loan Documents and/or Pre-Petition Debt Documents, the provisions of this Interim Order shall govern and control.

45.    Enforceability.    This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entity and there shall be no stay of execution or effectiveness of this Interim Order.

46.    Binding Effect; Successors and Assigns. The DIP Loan Documents and the provisions of this Interim Order, including, subject to entry of the Final Order, all agreements, stipulations and findings herein  shall be binding upon all parties in interest in the Cases, including, without limitation, the DIP Lenders, the Pre-Petition Lien Holders, any Committee and the Debtors and their respective successors and assigns (including any estate representative or any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the DIP Lenders, the Pre-Petition Lien Holders and the Debtors and their respective successors and assigns; provided, however, that the DIP Lenders and the Pre-Petition Lien Holders shall have no obligation to permit the use of Cash Collateral or extend any financing, as the case may be, to any trustee or similar responsible person appointed for the estate of any Debtor.

\\\NY - 718156/000600 - 2317982 v10

47.    Retention of Jurisdiction.   The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order and the rights of the parties set forth herein, and this retention of jurisdiction shall survive the confirmation and consummation of any Chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such Chapter 11 plan or order confirming such Chapter 11 plan or any order dismissing or closing the Cases.

Dated: ~~April~~ May 3, 2011
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

\\\NY - 718156/000600 - 2317982 v10