# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| RASER TECHNOLOGIES, INC., *et al.*, ) | |
| ) | Case No. 11-11315 (KJC) |
| Debtors. ) | |
| ) | (Joint Administration Requested) |
| ) | |

**LIMITED OBJECTION OF EVERGREEN – FE LIGHTNING DOCK, LLC TO MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014, (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (IV) SCHEDULING A <u>FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(a) AND (c)</u>**

Evergreen – FE Lightning Dock, LLC ("Evergreen FE"), by its undersigned counsel Moses & Singer LLP and Polsinelli Shughart PC, objects to certain limited provisions of the Motion for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014, (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, and (IV) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(a) and (c) (the "Motion") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support of this limited objection, Evergreen FE respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Debtors have not been substantively consolidated and there has been no showing that grounds for consolidation even exist. Nevertheless, the proposed DIP financing includes debtor Lightning Dock Geothermal HI-01, LLC ("Lightning Dock") as a guarantor of the DIP obligations to be incurred by other Debtors and requires that it pledge its assets as

collateral to secure that guaranty.  These provisions are contrary to the best interests of Lightning Dock and should not be approved.  The obligations imposed on Lightning Dock by the proposed DIP financing far exceed any benefit it may receive from the financing and would be highly prejudicial to the Lightning Dock estate.  The proposed DIP financing benefits Lightning Dock's parent and the parent's creditors.  Lightning Dock, however, is budgeted to receive $38,000 in loans under the proposed DIP financing.  It could obtain those funds, if really needed, from other sources (including Evergreen FE) on far better terms.  In exchange for that pittance, Lightning Dock is required to incur $8.75 million of debt and pledge its assets as collateral.  Furthermore, it is required to waive any right to marshal, so that the entire DIP financing debt could be enforced against Lightning Dock, leaving its stakeholders with nothing.  The Debtors have not satisfied the requirements for approval of the Motion as to the Lightning Dock debtor, and they cannot do so.

## ARGUMENT

2. Lightning Dock is a vehicle organized to develop an individual geothermal project.  There is a separate bank account for the project.  To date, any financial support it has received from debtor Raser Technologies, Inc. ("Raser") has been in the form of capital contributions.  Evergreen FE is a party to a letter agreement dated October 1, 2010, with Lightning Dock and certain other related entities, as amended (the "Letter Agreement").  Pursuant to the Letter Agreement, Evergreen FE made several advances to Lightning Dock in connection with a possible investment by Evergreen FE in Lightning Dock to develop its project.  Lightning Dock's obligation to Evergreen FE is secured by a first lien on certain property of Lightning Dock (the "Collateral").  The outstanding balance owed by Lightning Dock to Evergreen FE as of the Petition Date is $3,609,505.76 (the "Outstanding Balance").

3. In order for a debtor to obtain approval of proposed DIP financing, it must show:

(1) That the proposed financing is an exercise of sound and reasonable business judgment;

(2) That the financing is in the best interests of the estate and its creditors;

(3) That the credit transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the Debtor's businesses;

(4) That the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; and

(5) That the financing agreement was negotiated in good faith and at arm's length between the Debtor, on the one hand, and the Agents and the Lenders, on the other hand.

*In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003); *see also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (same); *see, e.g., In re Vectrix Corp.*, 2009 Bankr. LEXIS 5007, at *6-7 (Bankr. D. Del. Nov. 3, 2009).

4. In addition, courts require two additional factors:

(1) That no alternative financing is available on any other basis; and

(2) That no better offers, bids, or timely proposals are before the court.

*Farmland*, 294 B.R. at 879-881; *see, e.g., Vectrix*, 2009 Bankr. LEXIS 5007, at *6-7.

5. The proposed DIP financing does not satisfy these conditions *as to Lightning Dock as an individual debtor*. Indeed, no attempt whatsoever is made to satisfy the requirements as to individual debtors; rather the Debtors are simply lumped together.

6. The foregoing standards must be satisfied *with respect to each estate*. *See In re Innkeepers USA Trust*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010) ("In a bankruptcy case, it is 'Bankruptcy 101' that a debtor and its board of directors owe fiduciary duties to the debtor's creditors to maximize the value of the estate, and each of the estates in a multi-debtor case. As Judge Gerber held in *Adelphia*, in a case with multiple debtors, the debtors, as fiduciaries, have duties to refrain from favoring or appearing to favor one or another of their estates and its creditors over another." (citing *In re Adelphia Communications Corp.*, 336 B.R. 610, 669-71 (Bankr. S.D.N.Y. 2006)). Here, the Debtors have utterly failed to satisfy these standards with respect to the Lightning Dock estate.

7. If Lightning Dock is included as a guarantor and pledgor with no right to marshal, it would improperly enable Raser to borrow against the asset values of its Lightning Dock subsidiary and, in effect, remove that value from the subsidiary ahead of the rights of Lightning Dock's creditors and stakeholders. This is no different than forcing Lightning Dock to dividend the value of its assets to Raser without regard to the claims and interests senior to Raser's equity interest. Furthermore, the un-liened asset values in the Lightning Dock estate effectively are being diverted to the secured creditors of Geothermal I (whose current secured creditors receive $6 million of the proceeds of the DIP loan) and to Raser.

8. This diversion is exacerbated by the inclusion of the "no marshalling" provision in the DIP financing that would allow the DIP lenders to foreclose first against the assets to which the Lightning Dock's creditors and other stakeholders have a claim – stripping them of the ability to protect their interests.

9. The DIP facility in effect treats the Debtors as substantively consolidated for the benefit of the parent and the creditors of Geothermal I, with absolutely no showing that any basis

for substantive consolidation exists, and where the creditors of Lightning Dock receive no benefit from having the value of Lightning Dock's assets stripped out for the benefit of the Geothermal I and Raser. The Debtors cannot satisfy the Third Circuit's test for substantive consolidation of the Lightning Dock estate with that of the other Debtors. *See In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) ("In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors."). Evergreen FE invested specifically in Lightning Dock as a special purpose vehicle that owned a single project with the intention and expectation of financing the project and, ultimately owning a majority interest in the project through Lightning Dock. It did not look to the credit of any other debtor in making its investment.

10. Before the assets of Lightning Dock – a stand-alone debtor that has not been substantively consolidated with any other debtor – could be used as collateral for the debts of Geothermal I and to provide working capital for Raser, a showing would have to be made that the benefits Lightning Dock would receive from this proposed DIP financing equal or exceed the injury being done to it and its stakeholders, *i.e.*, that the financing is in the best interests of Lightning Dock's estate. No such showing has even been attempted in the Motion, and it would be impossible for such a showing to be made.

11. Lightning Dock is budgeted to receive $38,000 from Raser, as borrower under the proposed DIP facility, in exchange for pledging all of its assets as collateral for an $8.75 million debt. This makes no sense from the standpoint of the Lightning Dock estate. Lightning Dock

does not even need to borrow the $38,000 under the proposed DIP facility. Historically, Raser's contributions to Lightning Dock have all been in the form of equity contributions. Evergreen FE has advanced loans to Lightning Dock to advance the project and is prepared, if necessary, to advance the $38,000 itself, on a secured basis with a super-priority administrative claim in the Lightning Dock case. Such terms are more favorable to Lightning Dock than having it guaranty $8.75 million of affiliate debt from which it receives no benefit. Nor would Lightning Dock benefit in some intangible way from the funding that may keep Raser operating. All of the services to be provided by Raser to Lightning Dock will be charged for by the parent (not donated) and the same services could be purchased from a project developer on equal or better terms. In short, no business justification can be made for having Lightning Dock guaranty $6 million of debt previously incurred by a separate project plus an additional $2 million of working capital debt for Raser, of which only $38,000 might benefit Lightning Dock.

12. From the perspective of Lightning Dock's estate, the proposed DIP facility, indeed the bankruptcy filing of Lightning Dock, are entirely unnecessary. Lightning Dock was not in default of its debt and had no pressing financial obligations. Had it not filed, nothing detrimental would have occurred to its assets, but if its inclusion in the DIP financing is approved, the bankruptcy case itself could spell the financial destruction of the company. The bankruptcy filing, and now the proposed DIP financing, place the interests of the parent and its creditors ahead of the interests of Lightning Dock and its stakeholders. From the perspective of Lightning Dock and its estate, which is the only perspective that can lawfully be considered absent substantive consolidation – no valid purpose is served by its participation in the DIP facility.

13. The filing of the Lightning Dock case and its inclusion in the proposed DIP facility disregarded the interests of Lightning Dock and its stakeholders. There has been no consideration given to protecting the interests of Lightning Dock and its stakeholders. The DIP lenders are creditors of the parent and will become creditors of Geothermal I. They only seek to protect those interests. The parent, which negotiated the loan, is protecting only its own interests and that of its creditors – not the interests of its subsidiary or the subsidiary's stakeholders, whose interests are being sacrificed. *See Tse v. Ventana Med. Sys.*, 1998 U.S. Dist. LEXIS 16760, at *46 (D. Del. Sept. 23, 1998) ("Under Delaware law, directors of corporations owe a fiduciary duty to the corporations upon whose board they serve as well as to the shareholders of those corporations." (citing *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989))).

14. The proposed DIP facility cannot be approved because it violates the rights of all creditors and interest holders in Lightning Dock by enabling the value of its assets to be diverted for the benefit of creditors of Geothermal I and Raser. It has the effect of substantive consolidation without satisfying any of the requirements to warrant consolidation. It is not in the best interests of the Lightning Dock estate, because it provides it no significant benefit. It is not justified as a prudent exercise of business judgment. It was not negotiated at arms length and in good faith because the interests of Lightning Dock were not represented or given any consideration in the negotiation of the proposed DIP facility. In short, it is nothing less than a gross breach of fiduciary duty by those responsible for Lightning Dock, and should not be approved.

## CONCLUSION

Evergreen FE respectfully requests that the Court deny the Motion to the extent that Lightning Dock is included as a guarantor of the DIP obligations to be incurred by other Debtors and required to pledge its assets as collateral to secure that guaranty and grant it such additional relief as may be just and proper.

Dated: Wilmington, Delaware
May 12, 2011

POLSINELLI SHUGHART PC

    */s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Tel: 302-252-0920
Fax: 302-252-0921

- and -

MOSES & SINGER LLP
Alan Kolod
Alan Gamza
Mark N. Parry
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: 212-554-7800
Fax: 212-554-7700

*Counsel for Evergreen – FE Lightning Dock, LLC*