IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: Chapter 11
RASER TECHNOLOGIES, INC., *et al.*,

Debtors.

Case No. 11-11315 (KJC)
(Jointly Administered)
Chapter 11
Re: Docket Nos. 9, 34 and 41

## OBJECTION TO DEBTORS MOTION FOR ENTRY OF FINAL ORDER:

**PURSUANT TO 11 U.S.C.§§ 105, 361, 362, 363, 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014, (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPER - PRIORITY CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO PRE - PETITION SECURED PARTIES, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c).**

Prescott Lovern (Lovern), a shareholder of Raser Technologies, Inc. (Raser), and a party-in-interest in the above-captioned bankruptcy cases submits this objection to Debtors' Motion for Entry of Final Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Granting Adequate Protection to Pre-Petition Secured Parties, and (IV) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001 (b) and (c) (the "Motion").

## INITIAL STATEMENT

1.  Lovern objects to the Debtors' Motion for entry of Final Order on the grounds that Raser and the financing group led by Linden have defrauded shareholders by acting in their own self-interest to have their Financing Plan speedily approved, without the proper oversight of a Bankruptcy Trustee and without consideration of competing plans being considered. The Debtor, Lender and Thermo Lenders fraudulently failed to advise the Court of pre-petition

alternative financing that would have prevented the need to file for bankruptcy. See Objection, Docket No 53. The Debtors have improperly agreed because of their own self-interest to an overreaching debtor-in-possession financing facility, which contains provisions to shield the Lenders and the Thermo Lenders from liability for their pre-petition conduct.

2. The Plan Support Agreement insulates the Lenders and Thermo Lenders from investigation and prosecution of potential causes of action against them. The DIP Financing Agreement and PSA are self-dealing, non-arms' length transactions which are detrimental to the Debtors' estates, creditors and shareholders. The Motion misrepresents the Debtors' ability to obtain other financing arrangements.

3. The Court should deny the Debtors' request for orders approving the DIP Financing Agreement and PSA and the Court should appoint a Bankruptcy Trustee to investigate and oversee these proceedings to make them consistent with the requirements of the Bankruptcy Code, applicable law and bankruptcy policy.

## BACKGROUND

4. On April 29, 2011 the Debtors filed voluntary petitions for relief under Chapter 11, Title 11, of the United States Code. The Debtors continue to operate their businesses and manage their properties as Debtors in Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 3, 2011, the Court entered an order directing that the Debtors' Chapter 11 cases be jointly administered for procedural purposes only pursuant to section 105(a) of the Bankruptcy Code and Rule 1015(b) of the Bankruptcy Rules. See Docket No. 30. Relevant Pre-Petition Events.

5. The Lenders hold in the aggregate approximately $25 million of Convertible Notes. In June of 2010, Raser's Thermo 1 plant failed a production test that triggered a default under the company's project level debt. See Transcript of First Day Motions, p. 6. This failure was never disclosed to shareholders and it constitutes fraud on behalf of Raser management.

6. In November 2010, Raser was delisted by the NYSE and it is now quoted on the Over-the-Counter Bulletin Board. In November 2010, Raser sold all of the assets comprising the Transportation and Industrial business segment to VIA Motors, Inc. (VIA) owned by a private investor group.

7. In 2009, Raser issued press releases stating that they were a leader in geothermal production. Based on the bankruptcy filings, stating they have no significant geothermal production or assets, these were fraudulent misrepresentations in violation of securities laws.

8. In 2009, Raser stated numerous times that they had proven geothermal reserves of 238 MW when in fact they have almost no proven geothermal reserves. These were fraudulent misrepresentations in violation of securities laws.

9. In November 2010, Raser filed a Form 8-K with the Securities and Exchange Commission that in exchange for the sale of its transportation assets it obtained a non- dilutive 39% shareholder stake in a newly formed company, VIA Motors, Inc. [VIA]. Notwithstanding its Form 8-K disclosure regarding non-dilution, in December of 2010 Raser diluted its VIA Motors shares by unlawfully transferring 8% of its shares to Raser's CEO, Kraig Higginson and other VIA personnel. [Reported in **Raser 10K – April 15,**

2011]. This was a clear violation of securities law against self-dealing and impermissible transfers of assets.

10. According to Form 8-K filed by Raser on December 6, 2010, the Company entered into a post-employment severance agreement with Mr. Higginson to pay a total sum of $180,000, in twelve equal monthly installments through November 30, 2011. Considering the company's financial situation and Mr. Higginson's abandonment of Raser to become the President of VIA Motors, this was a fraudulent transfer of assets to Mr. Higginson.

11. Immediately after the filing of bankruptcy petitions, Lovern offered Raser Management **$2,000,000 cash** (US) for Raser's diluted stake in VIA, which is a non performing, alleged asset in a private company that has no sales or income. Lovern's offer to assist Raser in its reorganization was promptly rejected.

12. Lovern formally requested in writing prior to the first meeting May 12, 2011 [Lovern Exhibit A], in a letter to David Klauder, that Mr. Klauder request that a Trustee be appointed based on fraud, and that an Equity Committee be created so that shareholders can investigate obvious fraud inside the company. No Trustee was requested, or Equity Committee created by Mr. Klauder, and, he denied the request in writing [Lovern Exhibit B]. An Official Committee of Unsecured Creditors was formed by the United States Trustee on May 13, 2011

## OBJECTIONS

**A. The Debtors, Lenders and Thermo Lenders Entered Into the PSA and DIP Financing Agreement Based on Their Self-Interests.**

13. The Debtors have improperly agreed to DIP financing and PSA based on their self-interest of quickly concluding the deal and allowing the lenders to seize control of the reins of organization. *In re Tenney Village Co., Inc.*, 104 B.R. at 568. The PSA violates the Debtors' fiduciary obligations to the rest of the estate. *Id.* at 562, 569. As described in the facts above, the Debtor has a history of misrepresenting facts and a history of acting in its own best interest to the detriment of other stakeholders. Therefore, the Motion must be denied because, the DIP Financing Agreement and the PSA are prejudicial to many of their stakeholders and was not based on the exercise of sound business judgment. A Trustee should be appointed to investigate the bankruptcy proceedings in light of the Debtors past history of misrepresentations and fraudulent conduct.

B. **The DIP Agreement Is an Impermissible *Sub Rosa* Plan, The Approval of Which Will Dictate The Terms Of The Debtors' Joint Plan Of Reorganization.**

14. Objector Lovern agrees with the *Sub Rosa* objections of Higginson and adopts them herein by reference. See Objection, Dkt. 53. The DIP Financing Agreement is inappropriately linked with the PSA and constitutes an improper *Sub Rosa* plan. The PSA is a device through which the Debtors have locked themselves into a particular restructuring, with onerous consequences attached to the failure to implement that restructuring – all without the protections and procedures of Chapter 11 of the Bankruptcy Code. Thus, the PSA is an impermissible *Sub Rosa* plan.

15. If this Court approves the Motion on a final basis, it will have the effect of binding the Debtors and all creditors to the PSA Party Plan prior to a ruling on whether the Disclosure Statement provided adequate information or whether the PSA Party Plan properly complied with the confirmation requirements set forth in 11 U.S.C. § 1129. The Roll-Up of The

Pre-Petition Obligations Is impermissible.

16. Objector Lovern agrees with the roll-up objections of Higginson and adopts them herein by reference. See Objection, Dkt. 53. The proposed DIP Financing Agreement attempts to impose the disfavored practice of cross-collateralization of pre-and post-petition debt. The DIP Financing Agreement is a "roll- up" of the payments owing to the Thermo Lenders that converts pre-petition claims allegedly secured by liens, whose validity has yet to be determined and which, if the Lenders and Thermo Lenders have their way, never will be investigated, into claims currently payable with the priority ordinary accorded to secured post-petition obligations.

C. **The Deadlines Established In the PSA And DIP Agreements Preclude the Debtors From Exploring Other Potential Reorganization Plans.**

17. Objector Lovern agrees with the improper milestone objections of Higginson and adopts them herein by reference. See Objection, Dkt. 53. The Debtors are required under the PSA and the DIP Financing Agreement to meet certain accelerated milestones, which include: (i) the entry of the Interim Order by May 4, 2011; (ii) entry of final order on DIP Financing Agreement by May 20, 2011; (iii) confirmation of Chapter 11 Plan of Reorganization in conformance with the PSA and Plan Term Sheet by August 11, 2011; and (iv) ensuring an effective plan date by August 26, 2011. DIP Facility B-11 (d), (e), (f), (g) and (h). Failure to meet even one of these deadlines constitutes an Event of Default under the DIP Financing Agreement, and therefore, threatens the termination and acceleration of the Debtors' post-petition financing.

18. As noted by David Klauder for the United States Trustee, at the First Day Hearing, the milestones force the PSA Party Plan through this bankruptcy proceeding at an overly-hastened pace, foreclosing any possibility that the Debtors will be able to

consider or pursue other restructuring options.

19. By entering into the PSA and DIP Financing Agreement, the Debtors have bargained away their ability to fulfill their fiduciary duty to their estates and creditors. By conditioning the DIP Financing Agreement on satisfying the indefensibly accelerated milestones contained in the PSA, the Lenders and Thermo Lenders have overreached well beyond what the Bankruptcy Code permits.

D. **The PSA and DIP Financing Agreement Breach The Debtors' Fiduciary Duties To Their Estates And Creditors.**

20. Objector Lovern agrees with the breach of Debtor's Fiduciary Duties to the estates and creditors arguments of Higginson and adopts them herein by reference. See Objection, Dkt. 53. The Debtors have breached their fiduciary duties to their creditors by agreeing to the transactions proposed in the PSA and the DIP Financing Agreement. The Debtors are precluded from pursuing any reorganization plan other than the PSA Party Plan, even if such alternative plan would better serve their estates' and creditors' interests. Debtors have Not Demonstrated That They Are Unable To Obtain Financing On More Favorable Terms.

21. Objector Lovern agrees that with objector Higginson that the Debtors fail to meet their burden to demonstrate that alternative financing on more favorable terms is unavailable. As noted, this lack of evidence troubled the Court at the hearing on May 3, 2011. See Hrg. Tr. At 15:3-

## CONCLUSION

The Court should deny the Debtors' request for orders approving the DIP Financing Agreement and PSA and the Court should appoint a bankruptcy trustee to investigate and

oversee these proceedings to make them consistent with the requirements of the Bankruptcy Code, applicable law and bankruptcy policy.

Dated this 17th day of May, 2011

*(signature)*
Prescott Lovern
*Pro Se*
4045 262 Ave., S.E.
Issaquah, WA 98029
Phone: (202)-355-9464
Fax: (202)-355-9465
prescottl@rlassociateslaw.com

## CERTIFICATE OF SERVICE

**Prescott Lovern** hereby certifies that on May 17, 2011 copies of the foregoing Objection to Debtors' Motion for Entry of Final Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014, (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Granting Adequate Protection to Pre-Petition Secured Parties, and (IV) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c) was served on all parties registered in the case by fax or email, updated list furnished by American Legal Claims on May 17, 2011.

*(signature)*
Prescott Lovern

(8)