IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| RASER TECHNOLOGIES, INC., *et al.*, ) | Case No. 11-11315 (KJC) |
| ) | |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | Hearing Date: May 25, 2011 at 11:00am |
| ) | Re: Docket Nos. 9, 34, 53, 59 |

### REPLY OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND ZURICH AMERICAN INSURANCE COMPANY TO OBJECTIONS FILED BY KRAIG HIGGINSON AND MERRILL LYNCH TO THE DEBTORS' MOTION FOR ENTRY OF FINAL ORDER, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014, (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANK. P. 4001(B) AND (C)

The Prudential Insurance Company of America and Zurich American Insurance Company (collectively, the "Thermo Lenders"), who are secured lenders to Thermo No. 1 BE-01, LLC, ("Thermo"), such loan being secured by certain other assets of the Debtors,[1] reply to the objections filed by Kraig Higginson ("Higginson") [D.I. 53] and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill") [D.I. 59] to the Debtors' Motion for Entry of Interim and Final Orders, pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014, (I) Authorizing Debtors to Obtain Post-petition Financing, (II) Granting

---

[1] The Debtors are the following: Raser Technologies, Inc., Raser Technologies Operating Company, Inc., Raser Power Systems, LLC, RT Patent Company, Inc., Pacific Renewable Power, LLC, Western Renewable Power, LLC, Intermountain Renewable Power, LLC, Los Lobos Renewable Power, LLC, Columbia Renewable Power, LLC, Truckee Geothermal No. 1 SV-01, LLC, Truckee Geothermal No. 2 SV-04, LLC, Trail Canyon Geothermal No. 1 SV-02, LLC, Devil's Canyon Geothermal No. 1 SV-03, LLC, Thermo No. 1 BE-01, LLC, Thermo No. 2 BE-02, LLC, Thermo No. 3 BE-03, LLC, Cricket Geothermal No. 1 MI-01, LLC, Harmony Geothermal No. 1 IR-01, LLC, Lightning Dock Geothermal HI-01, LLC, and Klamath Geothermal No. 1 KL-01, LLC. For the purposes of these chapter 11 cases, the service address for all Debtors is: Raser Technologies, Inc., 5152 North Edgewood Drive, Provo, UT 84604.

3211012/1

Liens and Super-priority Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, and (IV) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c) (the "DIP Motion") [D.I. 9] as follows:

## PRELIMINARY STATEMENT

1. Despite the best efforts of Higginson and Merrill to characterize the DIP Motion as unreasonable, the evidence will demonstrate that as it relates to the Thermo Lenders, the DIP Motion is highly reasonable. The Thermo Lenders have agreed to be primed by the DIP Lenders under the circumstances described below even though the Thermo Lenders have a perfected first lien security interest in the assets of Thermo and other Debtors which comprise their collateral (collectively, the "Thermo Collateral").

2. Neither Higginson nor Merrill assert that the Thermo Lenders do not have perfected first lien security interests in the Thermo Collateral because such an assertion would be false. In exchange for allowing the DIP Lenders to take a senior and prior lien on the Thermo Collateral, the Thermo Lenders are requesting in part, a finding that their liens are first, perfected and unavoidable in the Thermo Collateral -- a fact that both Merrill and Higginson have, by omission, already admitted. The DIP Motion does not ask this court to release the Thermo Lenders of all possible causes of action that the Debtors might have. The Thermo Lenders ask only that the Debtors give up three rights: 1) their right to challenge the validity, enforceability and priority of the Thermo Lenders' liens; 2) their right to assert that such liens are avoidable; and 3) their right to recover the $6 million plus reasonable fees contemplated to be paid under the DIP Order. All other causes of action against the Thermo Lenders are fully preserved and can be pursued if the Debtors elect to do so.

A.  **The Liens of the Thermo Lenders in the Thermo Collateral are First and Prior to All Other Liens and Encumbrances in the Thermo Collateral.**

3. Under the credit, collateral and security documents described below, and copies of which are attached, predecessors in interest of the Thermo Lenders[2] made loans to Thermo for the purpose of financing the costs of the design, development, construction, installation, financing, testing, start-up and commissioning of Thermo's geothermal operations.

4. In connection with the credit and security agreements, Thermo executed and delivered to the Thermo Lenders' predecessors in interest promissory notes (the "Notes") dated October 20, 2008, in the original principal amounts of Twenty-Eight Million Sixty-Five Thousand Ninety-Two and No/100 Dollars ($28,065,092.00), and Three Million One Hundred Ten Thousand and No/100 Dollars ($3,110,000.00). True and correct copies of the Assignment and Acceptance Agreements under which the Thermo Lenders became the holder of the Notes are attached hereto as **EXHIBIT A**. True and correct copies of the Notes are attached hereto as **EXHIBIT B**.

5. On August 31, 2008, Thermo, as borrower, and Deutsche Bank, as Collateral Agent, entered into the *Credit Agreement among Thermo No. 1 BE-01, LLC, the Lenders, and Deutsche Bank Trust Company Americas* (the "Credit Agreement"), providing for a loan not exceeding Thirty-One Million One Hundred Seventy-Five Thousand Ninety-Two and

---

[2] The Thermo Lenders are assignees of two original promissory notes executed in August 2008. Merrill Lynch Credit Products, LLC, an affiliate of Merrill, sold the original notes to the Thermo Lenders in October, 2008 under two Assignment and Acceptance Agreements. Deutsche Bank Trust Company Americas ("Deutsche Bank" or "Collateral Agent") is the Collateral Agent for the original and current holders of said notes. As such, all security interests and liens described in this Reply are held by Deutsche Bank on behalf of the Thermo Lenders. For ease of reference, the term "Thermo Lenders" and "Deutsche Bank" may sometimes be used interchangeably in this document.

3211012/1

No/100 Dollars ($31,175,092.00). A true and correct copy of the Credit Agreement is attached hereto as **EXHIBIT C**.

6. The Thermo Lenders hold valid, existing and perfected security interests and liens, by virtue of the following instruments (the "Security Instruments"), in the property described therein (i.e., the Thermo Collateral):

a. *Deed of Trust, Leasehold Deed of Trust, Security Agreement, Assignment of Production, Fixture Filing and Financing Statement* (the "Deed of Trust"), dated August 28, 2008 and recorded in the Official Records of Iron County, Utah (B1144, Page 1447) and Beaver County, Utah (B427, Page 569), a true and correct copy of which is attached hereto as **EXHIBIT D**;

b. *First Amendment to Deed of Trust, Leasehold Deed of Trust, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production* (the "Amendment to Deed of Trust"), dated October 27, 2008 and recorded in the Official Records of Iron County, Utah (B1149, Page 235) and Beaver County, Utah (B429, Page 349), a true and correct copy of which is attached hereto as **EXHIBIT E**;

c. *Account and Security Agreement by and between Thermo No. 1 BE-01, LLC and Deutsche Bank Trust Company Americas* (the "Security Agreement"), dated August 31, 2008, granting a security interest and continuing lien "on all of the Company's right, title and interest in, to and under all of the property" of Thermo, a true and correct copy of which is attached hereto as **EXHIBIT F**;[3]

d. First Amendment to Account and Security Agreement, dated December 4, 2009, amending the Security Agreement of August 31, 2008, a true and correct copy of which is attached hereto as **EXHIBIT G**;

e. *Pledge Agreement by Intermountain Renewable Power, LLC and Each Pledgor Party Hereto in favor of Deutsche Bank Trust Company* (the "Intermountain Pledge Agreement"), dated August 31, 2008,

---

[3] Under the terms of the Security Agreement, the security interest and continuing lien extend to all property of Thermo, including but not limited to the following: all accounts; all chattel paper; all documents; all general intangibles including all payment tangibles; all goods including all equipment and inventory; all instruments; all insurance; all ASA intellectual property; all leases; all transaction documents, unless waived by the required lenders; all investment related property, including the security accounts and all deposit accounts; all letter of credit rights; all money; all receivables and receivables records; all commercial tort claims; all collateral support and supporting obligations relating to any of the foregoing; and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing. *See* Security Agreement, section 4.1.

securing the payment and performance of Thermo's obligations under the Credit Agreement (under which the Pledgor granted a continuing security interest and lien in "any and all right, title and interest" of the Pledgor in Thermo), a true and correct copy of which is attached hereto as **EXHIBIT H**;

f. *Pledge Agreement by Columbia Renewable Power, LLC and Each Pledgor Party Hereto in favor of Deutsche Bank Trust Company* (the "Columbia Pledge Agreement"), dated December 4, 2009, securing the payment and performance of Thermo's obligations under the Credit Agreement (under which the Pledgor granted a continuing security interest and lien in "any and all right, title and interest" of the Pledgor in Thermo), a true and correct copy of which is attached hereto as **EXHIBIT I**;

g. Financing Statement naming Thermo as debtor, and filed in the office of the Delaware Secretary of State on September 2, 2008, under File Number 2008 296614, a true and correct copy of which is attached hereto as **EXHIBIT J**;

h. Financing Statement naming Intermountain Renewable Power, LLC ("Intermountain") as debtor, and filed in the office of the Delaware Secretary of State on September 2, 2008, under File Number 2008 2966354, a true and correct copy of which is attached hereto as **EXHIBIT K**.

i. Financing Statement naming Columbia Renewable Power, LLC ("Columbia") as debtor, and filed in the office of the Delaware Secretary of State on December 7, 2009, under File Number 2009 3906333, a true and correct copy of which is attached hereto as **EXHIBIT L**.

7. The recorded Security Instruments demonstrate that the Thermo Lenders have a security interest in (i) all of the assets of Thermo and any proceeds thereof; (ii) all of Intermountain's equity interest in Thermo; and (iii) all of Columbia's equity interest in Thermo. Authenticated record searches conducted by the office of the Delaware Secretary of State reveal that each of the UCC Financing Statements was recorded with respect to each of the relevant debtors, thereby giving the Thermo Lenders a first priority security interest in all of the assets and any proceeds of Thermo and in Intermountain's and Columbia's equity interests in Thermo. True and correct copies of these searches are attached hereto as **EXHIBIT M**.

B. **The Thermo Lenders are Not Seeking a Complete
Release as a Condition to Subordinating Their Liens.**

8.  The Higginson objection and the Merrill objection flatly misstate the nature of the agreement between the Thermo Lenders and the parties as set forth in the DIP Motion. Both objections suggest that approval of the DIP Motion dictates the outcome of the case, and attempt to characterize the DIP Motion as implementing an illegal roll-up. Higginson specifically complains that "the Lenders and Thermo Lenders have opportunistically crafted a DIP financing agreement and a PSA, which together attempt to shield the lenders from a full investigation and challenge their prepetition conduct while at the same time imposing overreaching and inappropriate financing terms."[4] The Thermo Lenders negotiated extensively with the Debtors prepetition trying to seek amicable resolution of their claims.[5] This effort included negotiating directly with Higginson while he was still chairman of the Thermo board of directors. While it is true that the Plan Support agreement contemplates that under a plan of reorganization, the Thermo Lenders will release their second liens in the Thermo Collateral (as well as approximately 40% of their current claim) in exchange for a release of all causes of action in connection with a plan of reorganization, the fact is that the Thermo Lenders have not made obtaining such a release a condition of their agreement to be primed by the DIP Lenders.

9.  If and when the DIP Order is entered, and the Thermo Lenders are paid the $6 million plus reasonable fees and expenses, the Thermo Lenders have agreed to subordinate their prepetition liens in the Thermo Collateral to the DIP Lenders, with the understanding that the Thermo Lenders' unpaid prepetition indebtedness of approximately $4 million will still be

---

[4] *See* Kraig Higginson's Objection to Debtors' Motion for Entry of Final Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014, (i) Authorizing Debtors to Obtain Post-Petition Financing; (ii) Granting Liens and Super-Priority Claims; (iii) Granting Adequate Protection to Prepetition Secured Parties; and (iv) Scheduling a final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c), page 2.
[5] The Thermo Lenders, in good faith, also negotiated extensively with the DIP Lenders. The parties negotiated at arm's length.

owed to the Thermo Lenders. The Debtors and the Committee are free to investigate any causes of action they think they might have against the Thermo Lenders (other than causes of action 1) asserting the avoidability of, or challenging the validity, enforceability and priority of the Thermo Lenders' liens; and 2) recovering the $6 million paid to the Thermo Lenders and the fees and expenses paid on their behalf by Debtors under the DIP Order). If such claims are pursued, the Thermo Lenders preserve all of their rights against the estate as well.

10. If a purchaser other than the DIP Lenders wins at the Debtors' auction, the Thermo Lenders will retain their second liens on the Thermo Collateral, with all of their rights preserved, including their subordinated secured claim of approximately $4 million which will survive the DIP Order. In such instance, the Thermo Lenders will be obligated to support a plan of reorganization proposed by the Debtors only if the Thermo Lenders receive payment in full on their claims under that plan. Debtors are free to propose a plan that does not contemplate either a release or payment in full of the Thermo Lenders' claims. If the Debtors propose such a plan, the Thermo Lenders have the right to oppose any such plan and to defend themselves in any adversary proceeding that might be brought. Further, if the Debtors choose this route, during this entire period (from the entry of the DIP Order until and past confirmation), the Debtors are free to investigate and pursue causes of action against the Thermo Lenders if the Debtors believe they have any such claims.

11. Far from dictating the result of these chapter 11 cases, entry of the DIP Order will give the Debtors a choice: 1) they can pursue claims, if any, against the Thermo Lenders, or 2) they can release the Thermo Lenders as part of a confirmed plan. If the Debtors choose the former approach and pursue claims against the Thermo Lenders, the Thermo Lenders will have no legal obligation to release their secured liens on the Thermo Collateral and will be

free to contest any litigation brought against them. Alternatively, if the Debtors choose the latter approach, they can sell their assets to the DIP Lenders under a Plan, and release the Thermo Lenders in exchange for which, the Thermo Lenders will release (i) their additional secured claim, and (ii) the Thermo Lenders' liens on the Thermo Collateral.

12. Finally, any comparison between this transaction and an improper roll-up is misplaced. The DIP Lenders are not paying off their prepetition loan as a part of the transaction. Their prepetition loan will remain unpaid. The DIP Lenders are paying a portion (not the whole) of indebtedness owed to a third party -- the Thermo Lenders. The Thermo Lenders are not affiliated with the DIP Lenders, are not acting as a post-petition DIP lender, and in fact, have no willingness to act as a DIP lender. In the typical problematic roll-up, the DIP lender uses the post-petition loan as a way to bootstrap itself into a better legal position: exchanging a possible bad loan for one with administrative priority. That is not the case here. Here, the Thermo Lenders are exchanging a $10 million perfected and first priority lien position for only $6 million and a subordinated position with respect to the remainder of their claims.

13. In sum, the entry of the DIP Order, which is the result of arms length negotiations between the Debtors, the Thermo Lenders, and the DIP Lenders, will not dictate the results in this chapter 11 case as it relates to the Thermo Lenders. The Debtors have successfully negotiated the flexibility they need in order to proceed in these cases toward a successful reorganization.

C. **The Thermo Lenders Will Contest a Priming Lien if the DIP Motion is not Approved.**

14. Certain of the Objectors have suggested that the Debtors should be able to provide adequate protection to the Thermo Lenders and obtain priming liens without being required to make the $6 million payment to the Thermo Lenders contemplated by the DIP

-8-

Motion. Under no circumstances will the Thermo Lenders consent to a priming lien except on the terms described in the DIP Motion. Should the Debtors choose to contest the issue and attempt to prime the Thermo Lenders over their objection, the Debtors would have the extremely high burden of proving that the Thermo Lenders would be adequately protected.

15. A contested adequate protection fight could well doom the Debtors' reorganization. The DIP Motion, on the other hand, provides for a consensual priming of the Thermo Lenders without the uncertainty and expenses of an adequate protection fight.

## CONCLUSION

16. For all of the reasons set forth herein, the Court should approve the DIP Motion as written.

*[Signature page to follow]*

3211012/1

Dated: May 20, 2011

                MORRIS JAMES, LLP

By: *Brett D. Fallon*
Brett D. Fallon (No. 2480)
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494
Telephone: 302.888.6888
Facsimile: 302.571.1750
E-mail: bfallon@morrisjames.com

and

BAKER BOTTS L.L.P.
Judith W. Ross
Texas State Bar No. 21010670
2001 Ross Avenue
Dallas, Texas 75201
Telephone: 214.953.6605
Facsimile: 214.661.4605
E-mail: judith.ross@bakerbotts.com

ATTORNEYS FOR THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA
AND ZURICH AMERICAN INSURANCE
COMPANY