IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| RASER TECHNOLOGIES, INC., *et al.*, ) | Case No. 11-11315 (KJC) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

## EMERGENCY MOTION OF EVERGREEN – FE LIGHTNING DOCK, LLC FOR AN ORDER (I) PURSUANT TO 11 U.S.C. §§ 105(a) AND 1121(d), TERMINATING THE EXCLUSIVE PERIODS AS TO LIGHTNING DOCK AND (II) PURSUANT TO 11 U.S.C. §§ 105(a) AND 1125, DELAYING SOLICITATION WITH RESPECT TO THE JOINT PLAN OF REORGANIZATION OF RASER TECHNOLOGIES, INC. AND ITS AFFILIATED DEBTORS AS IT RELATES TO LIGHTNING DOCK, IF AND WHEN THE DISCLOSURE STATEMENT WITH RESPECT THERETO IS APPROVED

Evergreen – FE Lighting Dock, LLC ("FE-Evergreen"),[1] by and through its undersigned counsel, submits this emergency motion (the "Motion") for an order (i) pursuant to 11 U.S.C. §§ 105(a) and 1121(d), terminating as to Debtor Lightning Dock Geothermal HI-01, LLC ("Lightning Dock") the period during which the above-captioned Debtors and Debtors-In-Possession (collectively, the "Debtors") have the exclusive right to file a plan of reorganization (the "Exclusive Filing Period") and similarly terminating the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") and (ii) pursuant to 11 U.S.C. §§ 105(a) and 1125, to the extent this Court ultimately approves the Debtors' Disclosure Statement (the "Disclosure Statement") with Respect to the Joint Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors dated June 21, 2011 [Docket No. 215] or an amended version thereof, as it relates to Lightning Dock, delaying solicitation of votes by

---

[1] Capitalized terms used, but not defined herein, shall have the meaning ascribed to such terms in the Plan of Reorganization (the "Raser Plan") of Raser Technologies, Inc. and Its Affiliated Debtors dated June 21, 2011 [Docket No. 216].

2101604.1

Lightning Dock's creditors on the Raser Plan until five (5) business days following a hearing to approve a disclosure statement with respect to FE-Evergreen's proposed plan for Lightning Dock. In support of this Motion, FE-Evergreen respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Less than two months ago, Debtors' counsel told this Court "if we find someone who can sponsor a plan of reorganization on better terms than [the Sponsors], great, more power to them; we would love to have them there." Transcript of May 25, 2011 Hearing at p.17, lns 5-8. FE-Evergreen is prepared to propose a plan of reorganization for Lightning Dock that is far more favorable to Lightning Dock's creditors than the Raser Plan (the "FE-Evergreen Proposed Plan"). A draft of the FE-Evergreen Proposed Plan is attached hereto as Exhibit A.

2. Now that the Debtors have scrapped the auction they originally proposed, terminating the Exclusive Periods is the only alternative to allow a competitive process that maximizes recoveries for Lightning Dock's creditors. Indeed, at the May 25 hearing in connection with DIP financing, in response to the Court's question regarding terminating exclusivity, Debtors' counsel stated "the two ways to get around a new value investment, which is not at issue here, is either termination of exclusivity, or you open up and have an auction for the equity of the reorganized company. We've kind of chosen the latter here, and so I don't think that the former is really necessary." Transcript of May 25, 2011 Hearing at p.22, lns 19-24. Now, with the elimination of an auction, the former (termination of exclusivity) has become necessary. FE-Evergreen is prepared to propose a superior plan for Lightning Dock that, provided the Exclusive Periods are terminated now, can be confirmed prior to the September 12, 2011, deadline in the Final DIP Order, and will significantly enhance the distribution to creditors of Lightning Dock. Conversely, if exclusivity is not immediately terminated, the creditors of

Lightning Dock will be left, best case, with a recovery of next to nothing under the Raser Plan or, worst case, foreclosure by the Sponsors. Since it is unlikely the Raser Plan will be confirmed within the timetable imposed by the Sponsors, Lightning Dock's creditors, unless exclusivity is terminated, likely will have no alternative in the face of foreclosure by the Sponsors.

3. Although the Raser Plan is not advertised as a "new value" plan, it has all the objectionable features that moved the Supreme Court in *Bank of America Nat'l Trust & Sav. Assoc. v. 203 North LaSalle St. P'ship*, 526 U.S. 434 (1999) to prohibit confirmation of such a plan under section 1129(b) of the Bankruptcy Code (as defined below) absent termination of exclusivity. Under the Raser Plan, Raser Technologies, Inc. ("Raser"), Lightning Dock's parent, will retain its equity in Lightning Dock for the benefit of its creditors, the Sponsors. It is proposed that the claims of creditors against Lightning Dock will be eliminated for a *de minimus* recovery despite rejection of the Raser Plan by the two Lightning Dock creditor classes (Class 5 and Class 7(c)). Raser is contributing a pittance of cash and a collection of dubious litigation claims and other assets to fund distributions to those creditors. The officers of Lightning Dock have ceded their fiduciary responsibilities owed to Lightning Dock's creditors. They are favoring the interests of Raser, Lightning Dock's parent, and Raser's creditors in exchange for continued employment. As a result of these facts, the rule articulated in *LaSalle* (which mandates a competitive process) is applicable. It appears that this Court recognized this problem at the June 1st hearing concerning DIP financing, in response to Debtors' counsel advising the Court that it was scrapping the auction. Transcript of June 1, 2011 Hearing at pp.10-11. Accordingly, "cause" under section 1121(d) of the Bankruptcy Code clearly exists to terminate the Exclusive Periods as to Lightning Dock.

4.   Cause also exists to terminate the Exclusive Periods due to the Debtors' attempt to force an unsatisfactory and unconfirmable plan on Lightning Dock's creditors. As set forth in greater detail in FE-Evergreen's Disclosure Statement Objection (as defined below), there are several fatal defects in the Raser Plan that make it unconfirmable as to Lightning Dock.

5.   The factors identified in *Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich. 1997) also provide this Court with yet another basis to terminate the Exclusive Periods. Specifically, factors 3 (absence of good faith progress towards reorganization), 5 (failure to demonstrate reasonable prospects for filing a viable plan) and 6 (Debtors' lack of progress in negotiations with Lightning Dock creditors) each weigh in favor of terminating the Exclusive Periods.[2] Factors 1, 2, 4, 7 and 9 are inapplicable.

6.   Finally, several practical considerations support terminating the Exclusive Periods as to Lightning Dock.

7.   For all these reasons, FE-Evergreen respectfully requests that this Court terminate the Exclusive Periods as to Lightning Dock and, to the extent this Court ultimately approves the Disclosure Statement as it relates to Lightning Dock and permits solicitation of votes by Lightning Dock's creditors on the Raser Plan, delaying solicitation of votes by Lightning Dock's creditors on the Raser Plan until five (5) business days following a hearing to approve a disclosure statement with respect to FE-Evergreen Proposed Plan.

## BACKGROUND

8.   On April 29, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as

---

[2] With respect to factor 8, although the Debtors are not seeking an extension of exclusivity, the continuation of exclusivity to block the FE-Evergreen Proposed Plan will pressure Lightning Dock's creditors to submit to their demands and the demands of the Sponsors.

2101604.1                                                        4

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Court order dated May 3, 2011 [Docket No. 30]. The Debtors' estates have not been substantively consolidated.

9. On May 12, 2011, the United States Trustee for the District of Delaware appointed a statutory committee of unsecured creditors (the "Creditors Committee"). The Creditors Committee contains no creditor of Lightning Dock. No trustee or examiner has been appointed in these cases.

10. On June 2, 2011, the Court entered the Final Order (I) Approving Debtor-In-Possession Financing Pursuant to 11 U.S.C. §§ 105(a), 362, and 364 and Fed. Bankr. P. 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2; (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. Sections 105, 361, 362 and 363 of the Bankruptcy Code; (III) Granting Adequate Protection and Superpriority Administrative Claims; and (IV) Granting Related Relief (the "Final DIP Order") [Docket No. 165].

11. The Final DIP Order provides that it is an Event of Default (as defined in the Final DIP Order) if the Raser Plan is not confirmed by September 12, 2011, and the Effective Date of the Raser Plan does not occur by September 30, 2011.

12. On June 21, 2011, the Debtors filed the Disclosure Statement and the Raser Plan. Since the Debtors' cases have not been substantively consolidated, the Raser Plan must be evaluated separately as to each Debtor. On July 8, 2011, the Debtors filed their motion to, among other things, approve the Disclosure Statement [Docket No. 263].

13. On July 19, 2011, FE-Evergreen filed its Objection to the Disclosure Statement (the "Disclosure Statement Objection") [Docket No. 281].

## RELIEF REQUESTED

14. By this Motion, FE-Evergreen requests that the Court terminate the Exclusive Periods as to Lightning Dock so that the FE-Evergreen Proposed Plan may proceed. FE-Evergreen also requests that, in the event this Court ultimately approves the Disclosure Statement as it relates to Lightning Dock and permits solicitation of votes by Lightning Dock's creditors on the Raser Plan, such solicitation of votes by Lightning Dock's creditors on the Raser Plan be delayed until five (5) business days following a hearing to approve a disclosure statement with respect to FE-Evergreen Proposed Plan.[3]

## BASIS FOR RELIEF REQUESTED

### I. The Exclusive Periods Should Be Terminated

15. Section 1121(d) of the Bankruptcy Code provides that the Court may terminate the Exclusive Periods:

> . . . on request of a party in interest . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

16. Although "cause" justifying the termination of a debtor's exclusivity is not defined in the Bankruptcy Code, courts have found cause to terminate exclusivity in cases involving so-called "new value" plans. *See Bank of America Nat'l Trust & Sav. Assoc. v. 203 North LaSalle St. P'ship*, 526 U.S. 434, 441-43 (1999); *In re Situation Mgt. Sys., Inc.*, 252 B.R. 859, 865-66 (Bankr. D. Mass. 2000) (holding that "new value" provision in plan constituted cause to terminate exclusivity). In addition, courts will consider whether the debtor is using exclusivity "to force creditors to accept an unsatisfactory or unconfirmable plan." *Situation*

---

[3] FE-Evergreen does not seek such relief as to the other Debtors and has no objection to the confirmation process with respect to the Raser Plan as to the other Debtors.

*Mgt.*, 252 B.R. at 863 (citing *In re Texaco, Inc.*, 81 B.R. 806, 812-13 (Bankr. S.D.N.Y. 1988); *In re Standard Mill Ltd. P'ship*, 1996 WL 521190 (Bankr. D. Minn. 1996)).

17. Although more commonly considered in determining whether to extend exclusivity, some courts consider the following factors in deciding whether to terminate exclusivity:

1. the size and complexity of the case;

2. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

3. the existence of good faith progress towards reorganization;

4. the fact that the debtor is paying its bills as they become due;

5. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6. whether the debtor has made progress in negotiations with its creditors;

7. the amount of time that has elapsed in the case;

8. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9. whether an unresolved contingency exists.

*Dow Corning*, 208 B.R. at 664-65. Any one factor may constitute cause to terminate exclusivity. *See, e.g., In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

18. Section 1121(d)(1) of the Bankruptcy Code "grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause.'" *Geriatrics Nursing Home v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home)*, 187 B.R. 128, 132 (D. N.J. 1995) (*citing In re Kerns*, 111 B.R. 777, 781 (S.D. Ind. 1990); *In re Sharon Steele Corp.*, 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987)).

### A. *LaSalle* Mandates That The Exclusive Periods Be Terminated

19. One of the goals of Chapter 11 is to maximize the return to creditors. When existing equity holders propose a plan to retain their ownership of a debtor over creditor objection, courts have a legitimate concern that such holders, who in many cases may also be officers of the debtor, are advancing their own interests instead of those of creditors generally. As a result, when a "new value" plan is proposed, courts require that exclusivity be terminated to permit competing plans to be filed.[4] *See LaSalle*, 526 U.S. 434; *Situation Mgt.*, 252 B.R. 859.

20. The Raser Plan falls within the *LaSalle* rule. The *LaSalle* rule is concerned with plans under which the parent (or other equity holders) will retain its equity ownership in the debtor over creditor objection despite the failure to pay creditors in full. The contribution of "new value" for that equity is merely the mechanism by which the parent justifies that retention of value. The only argument to be made as to why the Raser Plan is not a new value plan is that the Sponsors and Raser have not taken the trouble to identify and justify the new value that they are contributing to warrant Raser's retention of equity in Lightning Dock (and its other subsidiaries). Instead, they merely presume that Raser can retain that equity. But Raser is contributing a motley collection of dubious assets that Lightning Dock's creditors will receive in exchange for having their interests in Lightning Dock eliminated. Lightning Dock's parent and sole shareholder is proposing a plan that would enable it to retain its interest. It is not doing this for the benefit of Lightning Dock's creditors but for the benefit of Raser's creditors, the Sponsors, and to enable Raser's existing management to keep their jobs.

21. The Debtors' management is doing so, in derogation of its fiduciary duties to the creditors of Lightning Dock, notwithstanding a proposal by FE-Evergreen, Lightning Dock's

---

[4] Some cases alternately require the equity to be auctioned to the highest bidder. Here, the Debtors determined not to proceed with the originally scheduled auction process.

largest creditor, that would result in a far superior return to Lightning Dock's general unsecured creditors. As a result, the Exclusive Periods should be terminated as to Lightning Dock so that FE-Evergreen may file and pursue its proposed plan that is far superior for the creditors of Lightning Dock.

22. It should be noted that the FE-Evergreen Proposed Plan is not a hypothetical or potential alternative plan based on mere speculation or conjecture. *See, e.g., Geriatrics Nursing Home*, 187 B.R. at 134 (denying a motion to terminate the debtor's exclusivity to allow creditors to pursue an indefinite hypothetical alternate plan). Rather, it is a definitive proposal with committed financial support. The creditors of Lightning Dock should have an opportunity to vote on it now without the threat of foreclosure hanging over their heads. Given the timetable mandated by the Sponsors, absent the termination of the Exclusive Periods, the creditors will be faced with the Hobson's choice of voting for an inferior Raser Plan or risking foreclosure.

**B.   The Raser Plan Is Unsatisfactory And Unconfirmable As To Lightning Dock**

23. Cause to terminate the Exclusive Periods also exists because the Debtors are seeking to force Lightning Dock's creditors (under the threat of foreclosure) to accept an unsatisfactory and unconfirmable plan. *See Situation Mgt.*, 252 B.R. at 863. As discussed at more length in the Disclosure Statement Objection, the Raser Plan is unconfirmable for numerous reasons. As noted in the Disclosure Statement Objection, Lightning Dock cannot confirm a plan without FE-Evergreen's support.[5] FE-Evergreen does not support the Raser Plan and will vote to reject it. This means for all intents and purposes that a Lightning Dock plan will not be confirmed (let alone prior to the September 12th deadline in the Final DIP Order) and the Sponsors will seek to foreclose Lightning Dock's assets.

---

[5] Although the Debtors' argue that a sub-class of the Convenience Class could constitute an impaired accepting class, such a class cannot satisfy the impaired accepting class requirement of section 1129 of the Bankruptcy Code.

24. Foreclosing on the Lightning Dock project appears to have been the Sponsors' intention all along. The Sponsors fought to make Lightning Dock liable for the full DIP facility (notwithstanding that seventy-percent (70%) of the initial DIP facility amount was being immediately paid to a creditor of the Debtor Thermo No. 1 BE-01, LLC) in order to improperly manipulate the bankruptcy process for this purpose. The (Raser) Plan Term Sheet attached as Exhibit A to the (Raser) Plan Support Agreement, which in turn was attached as Exhibit B to the Declaration of Nicholas Goodman filed with the Debtors' chapter 11 petitions, provided for the Raser Plan to include an unlawful provision intended to allow the Sponsors to improperly take the Lightning Dock project through foreclosure (or alternatively, coerce the creditors of Lightning Dock to accept an unsatisfactory plan). The provision, which has now been included in the Raser Plan as Section 6.3, provided that if the creditors of any Subsidiary Debtor did not accept the Raser Plan, then their Debtor's assets would be foreclosed on by the Sponsors and they would not receive even the pittance provided for in the Raser Plan.[6] The (Raser) Plan Term Sheet provides that:

> In the event the Plan is not confirmed with respect to any Subsidiary Debtor as a result of the failure by the Holders of Allowed Claims against the estate of such Subsidiary Debtor to vote in favor of the Plan, such Subsidiary Debtor shall be deemed to have been removed from the terms of the Plan and the Plan shall become effective with respect to each of the remaining Debtors. *Further, the Confirmation Order shall provide that the Sponsors shall be granted immediate relief from stay with respect to the estate of any Subsidiary Debtor that is removed from the Plan to permit the Sponsors to exercise their rights under the terms of the DIP Financing Documents with respect to the Assets of such Subsidiary Debtor. Any recoveries from the exercise of such rights shall be applied to reduce the obligations of the Debtors under the DIP Financing Documents or the New Sponsor Note.*

---

[6] In the Amended Plan filed on Friday night, July 22, 2011, the Debtors changed this provision so that Lightning Dock's assets are sold to the Sponsors (without the opportunity for higher and better offers) and its contracts assigned. This provision is even more problematic and objectionable that the old Section 6.3 of the Raser Plan.

(Raser) Plan Term Sheet, A-5 (emphasis added). It should come as no surprise to the Debtors or the Sponsors that FE-Evergreen (both a Class 5 and Class 7(c) creditor under the Raser Plan) would not support the Raser Plan. In fact, it is likely that the Debtors and Sponsors expected FE-Evergreen to vote against the Raser Plan.

25. The fact that the Sponsors will seek to foreclose against Lightning Dock and deprive it creditors of any recovery if they reject the Raser Plan is more than ample reason to give those creditors the opportunity to consider an alternative plan they can accept that will preserve and enhance their recovery.

26. Given the issues with the Raser Plan and the looming deadlines under the Final DIP Order, it is essential that the creditors of Lightning Dock have the option of an alternate plan.

C. **The *Dow Corning* Factors Support Terminating The Exclusive Periods**

27. Consideration of the factors in *Dow Corning* set forth in paragraph 17 above provides this Court with yet another basis to terminate the Exclusive Periods. Specifically, factors 3, 5 and 6 all support terminating exclusivity. Factors 1, 2, 4, 7 and 9 are inapplicable.

28. As discussed above, the Debtors' management has proposed a plan for Lightning Dock that is unsatisfactory and unconfirmable but preserves their jobs. They have done so without regard to the interests of creditors of Lightning Dock in breach of their fiduciary duties. As a result, factor 3 – the existence of *good faith* progress towards reorganization – weighs in favor of terminating the Exclusive Periods.

29. As set forth in the Disclosure Statement Objection, the Disclosure Statement lacks adequate information and the Raser Plan cannot be confirmed as to Lightning Dock. Indeed, without FE-Evergreen's support, Lightning Dock cannot confirm any plan. Thus, the Debtors

have not demonstrated reasonable prospects for filing a *viable* plan. Accordingly, factor 5 supports terminating the Exclusive Periods.

30. Factor 6 – whether the debtor has made progress in negotiations with its creditors – also weighs in favor of terminating the Exclusive Periods. Here, although the Debtors claimed to want unsecured creditors' input, they have proposed a plan with no consultation or negotiations with Lightning Dock's creditors that will pay such creditors nothing or next to nothing.

### D. Practicality And Other Considerations In The Interests Of Justice Establish Cause Sufficient To Terminate The Exclusive Periods

31. Beyond the standard analysis of the factors discussed above, "... practical considerations, or other considerations in the interests of justice, could override, in certain cases, the result after analysis of the nine [*Dow Corning*] factors." *In re Adelphia Communs. Corp.*, 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006) (*citing Dow Corning*, 208 B.R. at 670). Accordingly, even if the analysis of the relevant factors did not establish cause (which it does), the Court may still terminate the Exclusive Periods in the interests of practicality and justice.

32. Justice would be served by terminating the Exclusive Periods as it appears that the Debtors' management is disregarding their fiduciary duties to the creditors of Lightning Dock in exchange for job security by favoring the creditors of one Debtor over those of another. Thus, terminating the Exclusive Periods is necessary to protect the interests of creditors of Lightning Dock and enforce the Debtors' fiduciary duties in managing the Lightning Dock estate.

33. Terminating the Exclusive Periods also serves the interests of practicality. The FE-Evergreen Proposed Plan is not a hypothetical or potential alternative plan. Rather it is a definitive proposal evidenced by the draft FE-Evergreen Proposed Plan attached hereto. Terminating the Exclusive Periods is the only way to ensure that creditors of Lightning Dock

also get to consider the FE-Evergreen Proposed Plan. Because the FE-Evergreen Proposed Plan would provide substantially more value to unsecured creditors, it is deserving of meaningful consideration. From a practical standpoint, the earlier the various creditor constituencies are allowed to consider the FE-Evergreen Proposed Plan as a viable alternative to the Raser Plan, the better off the Lightning Dock estate and creditors will be. In fact, if the competing plan process is not begun immediately, the creditors of Lightning Dock will likely be in the position where they defeat confirmation of the Raser Plan only to face the threat of foreclosure by the Sponsors. Thus, the interests of practicality strongly support termination of the Exclusive Periods so that creditors of Lightning Dock may fully consider in light of the various options and realities the merits of the FE-Evergreen Proposed Plan in comparison with those of the Raser Plan.

34. Accordingly, in the interests of the Lightning Dock estate and its creditors, the Exclusive Periods must be terminated as to Lightning Dock.

## II. The FE-Evergreen Proposed Plan And The Raser Plan (With Respect To Lightning Dock) Should Be Dual Tracked

35. In order to give Lightning Dock's creditors a fair opportunity to consider the FE-Evergreen Proposed Plan, such creditors should be solicited by FE-Evergreen and Lightning Dock simultaneously. If the Debtors are permitted to solicit Lightning Dock creditors before FE-Evergreen is in a position to solicit votes on its proposed plan, such creditors may vote on the Raser Plan without knowing that a superior plan has been proposed.

36. As set forth in the Disclosure Statement Objection, the Disclosure Statement lacks adequate information and should not be approved. If, however, the Debtors can cure the many defects in their Disclosure Statement (and get over the hurdle that the Raser Plan is unconfirmable) prior to the approval of a disclosure statement with respect to the FE-Evergreen Proposed Plan, this Court should delay solicitation of votes by Lightning Dock's creditors on the

Raser Plan until five (5) business days following a hearing to approve FE-Evergreen's disclosure statement.

37. This will avoid significant confusion on the part of Lightning Dock's creditors and preserve the increased value for them under the FE-Evergreen Proposed Plan.

[ *Remainder of Page Intentionally Left Blank* ]

## CONCLUSION

38. For the reasons set forth herein, FE-Evergreen respectfully requests that the Court (i) terminate the Exclusive Periods as to Lightning Dock; (ii) to the extent it ultimately approves the Disclosure Statement as it relates to Lightning Dock and permits solicitation of votes by Lightning Dock's creditors on the Raser Plan, delay solicitation of votes by Lightning Dock creditors with respect to the Raser Plan until five (5) business days following a hearing to approve a disclosure statement with respect to FE-Evergreen Proposed Plan; and (iii) grant FE-Evergreen such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
July 25, 2011

POLSINELLI SHUGHART PC


By: /s/ Christopher A. Ward
Christopher A. Ward (No. 3877)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Tel: 302-252-0920
Fax: 302-252-0921

- and -

MOSES & SINGER LLP
Mark N. Parry
Alan Gamza
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: 212-554-7800
Fax: 212-554-7700

*Counsel for Evergreen – FE Lightning Dock, LLC*