## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
| RASER TECHNOLOGIES, INC., *et al.*, [1] | ) | Case No. 11-11315 (KJC) |
| Debtors. | ) | (Jointly Administered) |

D.I. 396.597

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
## CONFIRMING THE THIRD AMENDED PLAN OF REORGANIZATION OF
## RASER TECHNOLOGIES, INC. AND ITS AFFILIATED DEBTORS

Raser Technologies, Inc. and its affiliated, above-captioned debtors (collectively, the "Debtors") in these Cases,[2] having filed the *Third Amended Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors* (as it may have been amended or supplemented from time to time, the "Plan"), dated as of August 1, 2011; and the Bankruptcy Court having reviewed the Plan and the *Disclosure Statement with Respect to the Third Amended Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors* (the "Disclosure Statement"); and the hearing to confirm the Plan (the "Hearing") having commenced before the Bankruptcy Court on August 30, 2011 at 11:00 a.m.; and the Bankruptcy Court having considered the evidence presented, the statements of counsel at the Hearing, the record of these cases and all other evidence presented or proffered at the Hearing; and it appearing to the

---

[1] The Debtors are the following: Raser Technologies, Inc., Raser Technologies Operating Company, Inc, Raser Power Systems, LLC, RT Patent Company, Inc., Pacific Renewable Power, LLC, Western Renewable Power, LLC, Intermountain Renewable Power, LLC, Los Lobos Renewable Power, LLC, Columbia Renewable Power, LLC, Truckee Geothermal No. 1 SV-01, LLC, Truckee Geothermal No. 2, SV-04, LLC, Trail Canyon Geothermal No. 1 SV 02, LLC, Devil's Canyon Geothermal No. 1 SV-03, LLC, Thermo No. 1 BE-01, LLC, Thermo No. 2 BE-02, LLC, Thermo No. 3 BE-03, LLC, Cricket Geothermal No. 1 MI-01, LLC, Harmony Geothermal No. 1 IR-01, LLC, Lightning Dock Geothermal HI-01, LLC, and Klamath Geothermal No. 1 KL-01, LLC.

[2] Unless otherwise specified, capitalized terms and phrases used herein have the meanings ascribed to them in the Plan.

Bankruptcy Court that the legal and factual bases presented support confirmation of the Plan and all other relief granted herein; accordingly, the Bankruptcy Court hereby makes the following findings of fact, conclusions of law, and order (the "Order"):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     <u>Jurisdiction.</u> The Bankruptcy Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). The Bankruptcy Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). The Debtors are and remain qualified as debtors under Section 109 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

2.     <u>Venue.</u> Venue in the District of Delaware was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.

3.     <u>Findings of Fact and Conclusions of Law.</u> This Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). All findings of fact shall constitute findings of fact even if stated as conclusions of law, and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

4.     <u>Judicial Notice.</u> The Bankruptcy Court takes judicial notice of the docket in these Cases maintained by the clerk of the Bankruptcy Court, including without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Cases.

5.     Notice and Solicitation.  The Debtors complied with the Bankruptcy Court's *Order (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Packages, (B) Approving the Form and Manner of Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections (A) to Confirmation of the Plan, and (B) Proposed Cure Amounts Related to Contracts and Leases Assumed Under the Plan; and (IV) Granting Related Relief* entered on August 2, 2011 (the "Approval Order").  The transmittal and service of the Solicitation Packages (as defined in the Approval Order) (i) was sufficient notice of the Hearing; (ii) was sufficient notice of the opportunity for any party in interest to object to confirmation of the Plan; (iii) provided adequate time for creditors entitled to vote on the Plan to do so, and to take such other actions as contemplated or required by the Approval Order and the Ballots, including without limitation the Cash Election, Convenience Class Election and Creditor Opt-Out Election; and (iv) satisfied in all respects the requirements of the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 2002(b), 3016, 3017, and 3018), and the Local Rules of the Bankruptcy Court.  No other and further notice is required to grant the relief set forth herein.

6.     Voting.  The Debtors solicited and tabulated votes to accept or reject the Plan fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Approval Order.  As reflected in the *Declaration of Jeffrey Pirrung of American Legal Claim Services, LLC Regarding the Tabulation of and Results of*

*Voting With Respect to Third Amended Joint Plant of Reorganization of Raser Technologies, Inc. and Its Affiliated Debtors*, creditors in Classes 2, 3, 4, 5, 7(a), 7(b), 7(c), 7(d), 7(e), 8 and 10 voted to accept the Plan. Thus, all Classes entitled to vote on the Plan and for which Creditors submitted valid Ballots voted in favor of the Plan by the required amount and number for such Classes to accept the Plan.

7.    <u>Burden of Proof.</u>  The Debtors have met their burden of proving the elements of subsections (a) and (b) of Section 1129 of the Bankruptcy Code.

8.    <u>Section 1129(a)(1) - Compliance with Applicable Provisions of the Bankruptcy Code.</u>  The Plan complies with all, and is not inconsistent with, the applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the Bankruptcy Code, as follows:

a.    Pursuant to Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Interests, other than Administrative Claims and Priority Tax Claims.  As required by Section 1122, each Class of Claims and Interests contains only Claims and Interests substantially similar to other Claims or Interests within the Class.

b.    Pursuant to Sections 1123(a)(2) and (3) of the Bankruptcy Code, Articles IV and V of the Plan specify all Claims and Interests impaired or unimpaired, and specify the treatment of impaired and unimpaired Claims and Interests.  Pursuant to Section 1123(a)(4) of the Bankruptcy Code, Articles IV and V of the Plan also provide the same treatment for each Claim or Interest within a particular Class.

c.    Pursuant to Section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation.  Debtors will have, upon the Effective Date of the Plan, sufficient funds or other financial wherewithal to make all payments required on the Effective Date pursuant to the terms of the Plan. Moreover, Article VI and various other provisions of the Plan specifically provide adequate means for the Plan's implementation.

d.    In compliance with Section 1123(a)(6), the Plan contains no provision for the issuance of nonvoting equity securities.

e.    As required by Section 1123(a)(7) of the Bankruptcy Code, (i) the Debtors selected the officers and directors of the Reorganized Debtors in a manner consistent with the best interests of the Holders of Claims and Interests and with public policy, and (ii) the manner in which any successor officers and directors will be chosen is consistent with those interests and with such public policy.

f. The Plan is dated and identifies the persons submitting it as the proponents, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

g. Other than conduct automatically enjoined by the Bankruptcy Code, the Plan and Disclosure Statement describe in specific and conspicuous language all acts enjoined and identifies the entities subject to any injunction, thereby satisfying Rule 3016(c) of the Bankruptcy Rules.

9. Section 1129(a)(2) - Compliance with Applicable Provisions of the Bankruptcy Code. The Debtors, as proponents of the Plan, complied with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(2) of the Bankruptcy Code, including, without limitation, Sections 1125 and 1126 of the Bankruptcy Code and Rules 3016, 3017, 3018 and 3019 of the Bankruptcy Rules. The distribution of the Disclosure Statement and the procedures for soliciting and tabulating Ballots for acceptance and rejection of the Plan were fair, properly conducted and in accordance with Rules 3017 and 3018 of the Bankruptcy Rules, Section 1126(c) of the Bankruptcy Code, and the Approval Order.

10. Section 1129(a)(3) - Proposal of Plan in Good Faith. The Debtors proposed the Plan in good faith and not by any means forbidden by law. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan will maximize the return to the Debtors' creditors. Moreover, the Plan itself, and the process leading to its formulation, provide independent evidence of the Debtors' good faith in proposing the Plan.

11. Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as Reasonable. Pursuant to Section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors or a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, these Cases, or in connection with the Plan and incident to these Cases, has been disclosed to the Bankruptcy Court. Any such payments made pursuant to the Plan are reasonable. Any such payment after confirmation of the Plan is subject to approval of the Bankruptcy Court as reasonable.

12. **Section 1129(a)(5) - Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.** Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identity and affiliations of the proposed officers and directors of the Reorganized Debtors. The appointment of such parties is consistent with the interests of the holders of Claims and Interests and with public policy.

13. **Section 1129(a)(6) - Governmental Regulatory Control Over Rate Changes.** Section 1129(a)(6) of the Bankruptcy Code does not apply because the Plan does not provide for any changes in rates over which a governmental regulatory commission has jurisdiction.

14. **Section 1129(a)(7) - Best Interests of Creditors and Holders of Interests.** With respect to each impaired Class of Claims or Interests, each holder of a Claim or Interest in such Class (i) has accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. The Plan, therefore, satisfies Section 1129(a)(7) of the Bankruptcy Code.

15. **Section 1129(a)(8) - Acceptance of the Plan by Each Impaired Class.** The Plan was accepted by the necessary Classes of Claims, as follows:

   a. Pursuant to Sections 1126 and 1129(a)(8) of the Bankruptcy Code and as indicated in the Voting Certification, Classes 2, 3, 4, 5, 7(a), 7(b), 7(c), 7(d), 7(e), 8 and 10, the impaired Classes entitled to vote and for which valid Ballots were submitted, voted to accept the Plan pursuant to Section 1126(c) of the Bankruptcy Code. No Creditor holding an Allowed Class 6 Claim submitted a Ballot and, therefore, Class 6 is deemed to have rejected the Plan. The Plan provides that holders of Claims or Interests in Classes 9, 11, 12 and 13 will not receive or retain any property on account of such Claims or Interests, and holders of such Claims or Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. The Plan does not discriminate unfairly and is not unfair or

inequitable with respect to Classes 6, 9, 11, 12 and 13 within the meaning of Section 1129(b)(2) of the Bankruptcy Code.

b.  Class 1 is unimpaired and deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. The provisions of the Plan with respect to holders of the Claims in Class 1 are fair and appropriate.

16.  Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code. The Plan provides for treatment of Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims in the manner required by Section 1129(a)(9) of the Bankruptcy Code.

17.  Section 1129(a)(10) - Acceptance By at Least One Impaired Class. As indicated in the Voting Certification, Classes 2, 3, 4, 5, 7(a), 7(b), 7(c), 7(d), 7(e), 8 and 10, as impaired Classes, accepted the Plan pursuant to Section 1126(c) of the Bankruptcy Code. Accordingly, as required by Section 1129(a)(10) of the Bankruptcy Code, at least one Class of Claims impaired under the Plan has accepted the Plan, excluding votes cast by insiders.

18.  Section 1129(a)(11) - Feasibility of the Plan. The Plan is feasible. The Debtors will have sufficient funds and other financial wherewithal on the Effective Date to allow the Debtors to substantially consummate the Plan. The Plan, therefore, complies with Section 1129(a)(11) of the Bankruptcy Code.

19.  Section 1129(a)(12) - Payment of Bankruptcy Fees. In accordance with Section 1129(a)(12) of the Bankruptcy Code, Section 4.1 of the Plan provides for payment of all Administrative Claims, which includes all fees payable under 28 U.S.C. § 1930, on the Effective Date, unless the holder of such claims has agreed otherwise.

20.  Section 1129(a)(13) - Retiree Benefits. The evidence adduced or proffered at the Hearing established that the Debtors' Estates have no obligatation now or in the future, to pay

retiree benefits as described in Section 1129(a)(13) of the Bankruptcy Code. Thus, Section 1129(a)(13) does not apply to the Plan.

21. <u>Section 1129(b) - Confirmation of the Plan Over Non-acceptance of Impaired Class.</u> The Plan satisfies all requirements of Section 1129(b) of the Bankruptcy Code. Pursuant to Section 1129(b)(1) of the Bankruptcy Code, the Bankruptcy Court confirms the Plan notwithstanding that, contrary to Section 1129(a)(8) of the Bankruptcy Code, the holders of Claims or Interests in Classes 6, 9, 11, 12 and 13 are impaired and are deemed to have rejected the Plan. The Plan does not discriminate unfairly and is fair and equitable with respect to the holders of Claims or Interests in Classes 6, 9, 11, 12 and 13.

22. <u>Section 1129(d) - Principal Purpose of the Plan.</u> The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

23. <u>Section 1125(e) - Good Faith Solicitation.</u> Based on the record before the Bankruptcy Court in these Cases, the Debtors, and their employees, agents, financial advisors, investment bankers, attorneys, and other professionals have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in Section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by Section 1125 of the Bankruptcy Code and the releases and exculpation set forth in Article IX of the Plan.

24. <u>Sale of the Reorganized Raser Equity to the Sponsors.</u> The Plan contemplates the sale of the Reorganized Raser Equity to the Sponsors. The terms and conditions for the Debtors'

sale of the Reorganized Raser Equity to the Sponsors set forth in the Plan represent a fair and reasonable offer by the Sponsors to purchase the Reorganized Raser Equity under the circumstances of these Cases. Moreover, the consideration received by the Debtors for the Reorganized Raser Equity set forth in the Plan (i) is fair and reasonable, (ii) is the highest and best offer for the Reorganized Raser Equity, and (iii) constitutes reasonably equivalent value and fair and reasonable consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, and the District of Columbia.

25. <u>Releases, Exculpation, and Injunction.</u> The releases, exculpation and injunction provisions set forth in the Plan and as amended by this Order are fair, equitable, reasonable and in the best interests of Debtors and their Estates and the holders of Claims and Interests. Each of the release, exculpation and injunction provisions set forth in the Plan (a) lies within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) is an essential means of implementing the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the settlements and compromises incorporated in the Plan; (d) confers material benefits on, and is in the best interests of, Debtors, their Estates, their Creditors, and other parties in interest; and (e) is consistent with Sections 105, 363, 524, 1123, 1129 of the Bankruptcy Code. The record of the Confirmation Hearing and the chapter 11 cases supports the release, exculpation, and injunction provisions contained in the Plan.

26. <u>Consummation of Evergreen-FE Settlement.</u> The consummation of the Evergreen-FE Settlement set forth in the Plan is in the best interests of the Debtors, the Debtors' Estates and all holders of Claims. The Evergreen-FE Settlement is fair and equitable and falls within the range of reasonableness with respect to the asserted claims, taking into account the probabilities of success on the merits of all relevant parties, the difficulties of collection, the

complexity, expense and delay of litigation thereby resolved, and the interests of all creditors, and thus the Evergreen-FE Settlement represents a benefits to the Debtors' Estates and creditors. The Evergreen-FE Settlement also is the result of arms'-length, good faith negotiations among the Debtors, the Sponsors and Evergreen-FE.

27.     Settlement with Thermo Lenders.  The consummation of the settlement  with the Thermo Lenders that is set forth in the Plan is in the best interests of the Debtors, the Debtors' Estates and all holders of Claims.  Such settlement is fair and equitable and falls within the range of reasonableness with respect to the asserted claims, taking into account the probabilities of success on the merits of all relevant parties, the difficulties of collection, the complexity, expense and delay of litigation thereby resolved, and the interests of all creditors, and thus the settlement with the Thermo Lenders represents a benefit to the Debtors' Estates and creditors.  The settlement with the Thermo Lenders also is the result of arms'-length, good faith negotiations among the Debtors, the Sponsors and  the Thermo Lenders.  No objections have been raised to the settlement with the Thermo Lenders, and accordingly, all of the releases and injunctions contained in Section 9.5 of the Plan are fully operative as written.

28.     Litigation LLC.  The vesting in the Litigation LLC of all of the Debtors' right, title and interests in the PWPS Claims free and clear of all Claims and Interests of any Person is appropriate and in the best interests of the Debtors and the Estates and creditors.  It is appropriate and in the best interests of the Debtors and the Estates and their creditors, effective as of the Effective Date, to enter into the Litigation LLC Operating Agreement and establish the Litigation LLC, all in accordance with the Plan and this Order.  The form and terms of the Litigation LLC Operating Agreement, as the same may be subsequently amended or modified, are appropriate and in the best interests of the Debtors and the Estates and their creditors.  On execution by the

Reorganized Debtors, the Litigation LLC Operating Agreement shall be valid, binding, and enforceable on holders of membership interests of the Litigation LLC in accordance with its terms.

29.     _Creditor Trust._  The vesting in the Creditor Trust of all Avoidance Actions and D&O Claims is appropriate and in the best interests of the Debtors and the Estates and creditors. It is appropriate and in the best interests of the Debtors and the Estates and their creditors, effective as of the Effective Date, to enter into the Creditor Trust Agreement, establish the Creditor Trust, appoint the Creditor Trustee, and appoint the Plan Advisory Committee, all in accordance with the Plan and this Order.  The form and terms of the Creditor Trust Agreement, as the same may be subsequently amended or modified, are appropriate and in the best interests of the Debtors and the Estates and their creditors.  Upon execution, the Creditor Trust Agreement shall be valid, binding, and enforceable in accordance with its terms.

30.     _Implementation of Plan._  Pursuant to Section 1142(b) of the Bankruptcy Code, no action of their respective directors, officers, managers or members will be required to authorize the Debtors, Reorganized Debtors, Litigation LLC or the Creditor Trust, as applicable, (i) to effectuate and carry out the Plan or any order of the Bankruptcy Court relating thereto, (ii) to consummate the transactions contemplated by the Plan or such orders, or (iii) to take any other action or thing contemplated by the Plan or such orders entered in connection therewith, and all such actions and things hereby are deemed taken or done with like effect as if authorized or approved by unanimous actions of such directors, officers, managers or members.

31.     _Assumption, Assignment or Rejection of Executory Contracts and Unexpired Leases - Section 1123(b)(2)._  Pursuant to Article VII of the Plan and this Order, Debtors have exercised sound business judgment in determining (i) to assume, or assume and assign, each of

the Executory Contracts listed on <u>Exhibit 7.1</u> of the Plan on the Effective Date and pursuant to Section 7.1 of the Plan and (ii) to reject all other Executory Contracts pursuant to Section 7.2 of the Plan. As a result of the assumption of the Executory Contracts identified on <u>Exhibit 7.1</u> of the Plan and the payment of any related Cure Claim in accordance with the Plan, any existing default under any Executory Contract assumed pursuant to the Plan and this Order shall have been, and hereby is deemed, cured.

## II. ORDER

32. <u>Approval and Confirmation of the Plan.</u> The Plan hereby is **APPROVED** and **CONFIRMED** pursuant to Section 1129 of the Bankruptcy Code.

33. If there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control.

34. All objections and responses to, and statements and comments regarding, the Plan, to the extent not withdrawn prior to entry of this Order, or not cured by the relief granted herein, hereby are expressly overruled.

35. The terms of the Plan hereby bind the Debtors and all holders of Claims or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted the Plan), any and all non-debtor parties to executory contracts and unexpired leases with Debtors and the respective heirs, executors, administrators, successors, or assigns (including the Litigation LLC and Creditor Trust), if any, of any of the foregoing.

36.     The Debtors, Sponsors, Reorganized Debtors, Litigation LLC, Creditor Trust, and all other appropriate parties are authorized to execute and deliver any and all documents and instruments and take any and all action necessary or desirable to implement the Plan and this Order and to effect any other transactions contemplated therein or thereby, regardless of whether the Plan or this Order specifically refers to such actions or documents, including without limitation (i) adopting amended articles of incorporation, bylaws, operating agreements or similar governing documents, and (ii) changing the name of Reorganized Raser to Cyrq Energy, Inc. To the extent that under applicable non-bankruptcy law any of the foregoing actions would otherwise require the consent, authorization or approval of the officers, directors, stockholders, managers or members of such entity, this Order constitutes such consent, authorization or approval.

37.     The execution, entry into, and consummation of all documents, agreements and instruments contemplated by the Plan hereby are and will be deemed to have occurred and be effective as provided in the Plan, and hereby are authorized and approved in all respect and for all purposes without any requirement of further action by stockholders, members or directors of the Debtors, Sponsors, Reorganized Debtors, Litigation LLC, Creditor Trust, and all other appropriate parties.

38.     <u>Plan Modifications.</u>  To the extent any of the provisions of this Order constitute modifications of the Plan, the Plan, as modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and is hereby approved.  All creditors and equity security holders that previously voted to accept the Plan prior to its modification shall be and hereby are deemed to have voted to accept  the Plan as modified hereby pursuant to Bankruptcy Rule 3019 because any modification of the Plan effected by this Order (i) does not adversely affect the treatment of

any creditor or the interest of any equity security holder under the Plan, or (ii) such modification was made with the consent of such creditor or holder of an interest.

39.  Release Provisions.  Notwithstanding any other provision of this Order or the Plan to the contrary, the releases in favor of Persons other than the Debtors that are provided for in Section 9.4 of the Plan shall apply only to claims, causes of action and liabilities held by Holders of Claims or Interests that are impaired under the Plan and the Holder of such Claim or Interest (i) has the right to vote on the Plan, (ii) is entitled to make the Creditor Opt-Out Election, and (iii) has not properly made the Creditor Opt-Out Election.  In addition, nothing in the Plan or this Order shall (a) release any non-Debtor from liability in connection with any legal action or claim brought by the United States, including the U.S. Securities and Exchange Commission or the Internal Revenue Service ("IRS"), or (b) enjoin the United States from enforcing any such claim against any non-Debtor.

40.  Assumption of Executory Contracts with the United States.  Notwithstanding any other provision of this Order, the Plan and/or any documents used to implement the Plan to the contrary, any Executory Contracts by and between any of the Debtors and the United States only shall be assumed under the Plan (i) with the consent of the United States, and (ii) after the payment of all outstanding post-Petition Date obligations and Cure Claims arising under or related to such Executory Contract.  Furthermore, nothing in this Order, the Plan and/or any documents used to implement the Plan shall be deemed to establish the amount of any Cure Claim with respect to any Executory Contract to which the United States is a party, and such Cure Claims shall be established solely through the Cure Payment Schedule and Cure Payment Objection process set forth in the Plan.

41.    IRS Provisions. Notwithstanding any provision to the contrary in the Plan, this Order, and any implementing Plan documents, nothing shall: (1) affect the ability of the IRS to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (2) affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved; (3) discharge any claim of the IRS described in 11 U.S.C. § 1141(d)(6); or (4) for any purpose, including but not limited to claim allowance, require the IRS to file a claim for liabilities described in 11 U.S.C. §§ 503(b)(1)(B) and (C).  To the extent the  IRS Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, the IRS Priority Tax Claims shall be paid in equal quarterly installments calculated from the Petition Date over a five-year period and shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621 and 6622.  Administrative expense claims for taxes owed to the United States shall accrue interest and penalties as provided by applicable non-bankruptcy law until paid in full.

42.    Modification of Definition of "Released Parties".  The definition of "Released Parties set forth in Section 2.1(oooo) of the Plan shall be deleted in its entirety and replaced with the following:

> (oooo) **Released Parties**.    (i) Each of the Debtors; (ii) the Sponsors and Wilmington Trust, National Association (as successor to Wilmington Trust FSB), solely in its capacity as administrative agent under the DIP Financing Documents; (iii) Parsoon Opportunity Fund, Ltd., (iv) the Committee and its members, solely in their capacity as such; (v) the Creditor Trustee and Plan Advisory Committee; (vi) Kraig Higginson; (vii) Brent Cook; (viii) John A. Sullivan; (ix) Richard Clayton; and (x) any member, officer, director or employee of, or attorney or other professional for the foregoing solely to the extent that such parties delineated in this (x) served in such capacity on or after the Petition Date; provided, however, that notwithstanding anything to

the contrary herein, any professional retained by the Debtors pursuant to the *Order Authorizing Debtors and Debtors-In-Possession to Employ Professionals Used in the Ordinary Course of the Debtors Business* [D.I. 195] shall not receive a release or waiver of any Avoidance Action.

43. <u>Modification of Section 5.6 of the Plan</u>. Section 5.6 of the Plan shall be deleted in its entirety and replaced with the following:

> 5.6 **Class 6 – Other Secured Claims**. At the sole option of the Reorganized Debtors, each Holder of an Allowed Class 6 Claim shall receive on the Effective Date or as soon thereafter as reasonably practicable (a) Cash in amount equal to the amount of the Allowed Class 6 Secured Claim, (b) turnover of the Assets that constitute collateral security for such Allowed Class 6 Secured Claim, (c) a new promissory note made by the applicable Reorganized Debtor, secured by a Lien on the Assets of such Reorganized Debtor, and requiring payments having an aggregate present value, in each case sufficient to provide the Holder with the realization of the indubitable equivalent of such Allowed Class 6 Claim, or (d) such other, less favorable treatment as is agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Class 6 Claim.
>
> Class 6 is an impaired Class and entitled to vote on the Plan.

44. <u>Modification of Section 5.10 of the Plan</u>. Section 5.10 of the Plan shall be deleted in its entirety and replaced with the following:

> 5.10 **Class 7(d) – ML Unsecured Claims Against ML Debtors**. Each Holder of an Allowed Claim in Class 7(d) shall receive on the Effective Date (i) the Reorganized Raser Note, and (ii) a release and waiver of any and all Causes of Action against Merrill Lynch, specifically excluding any and all Avoidance Actions that may be pursued in connection with the transfers listed on <u>Exhibit 5.10</u>; provided, however, that if any such Avoidance Action is not commenced within ninety (90) days from the Effective Date, or such later date as is agreed upon in writing by the Creditor Trustee and Merrill Lynch, such Avoidance Actions are released and waived without further order of the Court. For the avoidance of doubt, in no event shall Class 7(d) share in any distributions (A) from the Creditor Trust and/or (B) attributable to the holders of Class B membership interests in the Litigation LLC.
>
> Class 7(d) is an impaired Class and is entitled to vote on the Plan.

Furthermore, a new Exhibit 5.10, which is annexed to this Order as <u>Exhibit A</u>, shall be deemed annexed to the Plan.

45. <u>Sale of the Reorganized Raser Equity to the Sponsors.</u> The Debtors hereby are authorized to sell the Reorganized Raser Equity to the Sponsors pursuant to the terms and conditions set forth in the Plan.

46. <u>Litigation LLC.</u> Pursuant to the Plan, all of the Debtors' right, title and interests in the PWPS Claims free and clear of all Claims and Interests of any Person shall vest in the Litigation LLC on the Effective Date. The Litigation LLC shall have all of the rights and powers set forth in the Plan and the Litigation LLC Operating Agreement.

47. <u>Creditor Trust.</u> Pursuant to the Plan, the Avoidance Actions and D&O Claims shall vest in the Creditor Trust on the Effective Date. The Creditor Trust, Creditor Trustee and Plan Advisory Committee shall have all of the rights and powers set forth in the Plan and the Creditor Trust Agreement.

48. <u>Transfer of Collateral from Lightning Dock Project Entity.</u> Pursuant to the Plan and to facilitate the Evergreen-FE Settlement, on the Effective Date (i) the Reorganized Lightning Dock Project Entity shall be deemed to have transferred the Lightning Dock Collateral to Los Lobos free and clear of all Liens, and (ii) Reorganized Los Lobos shall pledge the Lightning Dock Collateral as collateral security for its obligations under the Evergreen-FE Promissory Note.

49. <u>Execution by Third Parties.</u> Each and every federal, state and local government agency or department shall be, and hereby is, directed to accept, and lessors or holders of liens are directed to execute, any and all documents, instruments, or amendments necessary and appropriate to consummate the transactions contemplated under the Plan.

50.    <u>Injunctions and Stays Remain in Effect.</u>  All injunctions and stays in effect on the Confirmation Date pursuant to Sections 105 and 362 of the Bankruptcy Code or otherwise shall remain in full force and effect in accordance with the Plan, except that nothing herein shall bar the taking of any actions necessary to effectuate the transactions contemplated by the Plan or this Order.  For the avoidance of doubt, the injunction provisions of the Plan shall enjoin actions against Released Parties only to the extent such Released Parties are exculpated or are receiving releases under the Plan.

51.    <u>Approval of the Releases, Settlements and Injunctions.</u>  Pursuant Sections 1123(b)(3)(A) and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, releases, and injunctions set forth in the Plan, and implemented by this Order, including without limitation the Evergreen-FE Settlement and the settlement with the Thermo Lenders, hereby are approved as fair, equitable, reasonable and in the best interests of the Debtors and their Estates and the Holders of Claims and Interests; <u>provided</u>, <u>however</u>, notwithstanding anything to the contrary in the Plan or this Order, such releases and injunctions shall not include, nor shall they be deemed to provide, a release of any obligations under the Plan or a stay against enforcing any provision of the Plan in accordance with its terms.

52.    <u>Assumption and Rejection.</u>  Subject only to the occurrence of the Effective Date and the payment of all applicable Cure Claims, the assumption and rejection of the Executory Contracts of Debtors in accordance with the Plan and this Order shall be, and hereby is, approved in all respects pursuant to Section 365 of the Bankruptcy Code.

53.    <u>Modification of Exhibit 7.1 to the Plan.</u>  Exhibit 7.1 hereby is amended to:

a.    Delete the Executory Contract by and between Les Olson Company and Raser Technologies, Inc. for the rental of 3 copiers at the Debtors' corporate headquarters.  Such Executory Contract will be rejected on the Effective Date pursuant to section 7.2 of the Plan and section 365 of the Bankruptcy Code.

b.  Delete the Executory Contract by and between Via Automotive, Inc. (aka VIA Motors, Inc.) and Raser Technologies, Inc. identified as the "Equity Purchase Agreement." Such Executory Contract will be rejected on the Effective Date pursuant to section 7.2 of the Plan and section 365 of the Bankruptcy Code.

c.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Raser Power Systems, LLC, for NVN77801 (0270778010) from $289 to $0.

d.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Raser Power Systems, LLC, for NVN83961 (0270839610) from $0 to $30.82.

e.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Raser Power Systems, LLC, for NVN83962 (0270839620) from $0 to $11.66.

f.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Raser Power Systems, LLC, for NVN83964 (0270839640) from $0 to $25.64.

g.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Raser Power Systems, LLC, for NVN83965 (0270839650) from $0 to $26.35.

h.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Lightning Dock Geothermal HI-01, LLC, for NMNM034790 (0300347900) from $0 to $5,832.43.

i.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Lightning Dock Geothermal HI-01, LLC, for NMNM108801 (0301088010) from $0 to $8.10.

j.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Intermountain Renewable Power, LLC, for UTU087782 from $16,915 to $13,803.86.

k.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Intermountain Renewable Power, LLC, for UTU087783 from $2,373 to $2,673.38.

l.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Intermountain Renewable Power, LLC, for UTU087784 from $15,252 to $17,182.62.

m.  Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Intermountain Renewable Power, LLC, for UTU087785 from $15,363 to $17,307.47.

n.   Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Intermountain Renewable Power, LLC, for UTU087786 from $13,524 to $15,235.89.

o.   Amend the Cure Amount for the Executory Contract by and between the USDOI, Bureau of Land Management, and Intermountain Renewable Power, LLC, for UTU087787 from $15,360 to $17,304.29.

54.   <u>Rejection Claims and Rejection Claims Bar Date.</u>   If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the counterparty to such executory contract or unexpired lease, such Claim, to the extent timely filed and an Allowed Claim, shall be classified in Classes 7(a), 7(b), 7(c), 7(e), 8 or 10, as appropriate. The Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against Debtors, the Reorganized Debtors, their successors or properties, unless a proof of such Claim is filed and served on the Debtors or Reorganized Debtors, as applicable, within thirty (30) days after the date of notice of the entry of the order of the Court rejecting the Executory Contract, which may include, if applicable, this Order. To the extent Rejection Claims initially are Disputed Claims, but subsequently become Allowed Claims, the Reorganized Debtors shall pay such Rejection Claims in accordance with the Plan, but nothing herein shall constitute a determination that any such rejection gives rise to or results in a Claim or constitutes a waiver of any objections to such Claim by the Debtors, the Reorganized Debtors, or any party in interest.

55.   <u>Discharge.</u>   Pursuant to Sections 363(f), 524, and 1141(d)(1) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or this Order, as of the Effective Date, Confirmation shall discharge and release the Debtors and their Estates, Reorganized Debtors, and all property of the Debtors, Reorganized Debtors and their Estates from any and all Claims, debts, Liens, security interests, encumbrances and Interests that arose before the Confirmation Date to the full extent permitted by the Bankruptcy Code, including, but not limited to, all principal and any interest accrued thereon, and all liabilities in respect thereof shall

be extinguished completely. Except as otherwise specifically provided in the Plan or this Order, the distributions of cash and other property or other performance under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in Debtors, Reorganized Debtors, or any of their assets or properties that arose prior to the Confirmation Date, including any Claim for interest accruing after the Petition Date and prior to the Effective Date. On and after the Effective Date, except as specifically provided in the Plan, all holders of Claims and Interests arising prior to the Confirmation Date shall be permanently barred and enjoined from asserting against any Debtor, Reorganized Debtor, the Litigation LLC, the Creditor Trust or their respective assets any other or further Claims or Interest that arose prior to the Confirmation Date, including Claims based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. As to the United States, nothing in the Plan or this Order shall discharge or release any valid right of setoff.

56. <u>Retention of Jurisdiction.</u> The Bankruptcy Court shall retain jurisdiction, to the maximum extent permitted by the Bankruptcy Code and other applicable law and notwithstanding the prior closure of any of Debtors' Cases, of all matters arising out of, and related to, these cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code.

57. <u>Exemption from Transfer Taxes.</u> Pursuant to Section 1146(a) of the Bankruptcy Code, the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan will not be subject to any stamp tax, recording tax, personal property transfer tax, sales or use tax, or other similar tax or fee. All recording and filing officers and clerks wherever located are hereby directed to accept for filing or recording, and to file or

record immediately upon presentation thereof, any mortgage, deed of trust or other instrument of transfer without payment of any stamp tax, recording tax, personal property transfer tax, sales or use tax, or similar tax or fee. Furthermore, the transfer of the Debtors' Assets to any party shall not be subject to any stamp tax, recording tax, personal property tax, transfer tax, sales or use tax or any other similar tax or fee. The Debtors hereby are authorized to deliver a notice or short form of this Order to any state recording officer to the effect that such officer must accept for filing such documents described in this paragraph without charging any stamp tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax or other similar tax or fee.

58.     Prior to the Effective Date, after consultation with the Committee, the Debtors may make non-material modifications, corrections, supplements or amendments to any document filed as part of the Plan Supplement without further Order of the Court.

59.     Pursuant to Rules 2002(f)(7) and 3020(c) of the Bankruptcy Rules, the Debtors hereby are directed to serve a notice of the entry of this Order no later than ten (10) Business Days after the entry of this Order on all holders of Claims against or Interests in the Debtors and other persons on whom the notice of the Hearing was served.

60.     Pursuant to Bankruptcy Rule 3020(e), this Order shall not be automatically stayed, but shall be effective and enforceable immediately upon signature and entry of this Order on the jointly administered docket in these cases. Time is of the essence in closing the transactions contemplated by the Plan, and the Debtors and the Sponsors intend to cause the Effective Date of the Plan to occur as soon as practical. Therefore, all parties in interest must exercise due diligence in filing an appeal and pursuing a stay of this Order or risk their appeal being foreclosed as moot.

61.    The Debtors hereby are directed to serve a copy of this Order on each party that has filed a notice of appearance in these Cases and on each party that filed an objection or response to, or statement or comments regarding, the Plan, no later than ten (10) Business Days after the Confirmation Date.

Dated: __Aug 30__ ,2011
        Wilmington, Delaware

_____
United States Bankruptcy Judge